SCHULZ *v.* GRAHAM; KERCHEVAL.

[No. 29,250.   Filed April 15, 1955.]

*Jones, Obenchain & Butler,* of South Bend, for appellant.

*John W. Montgomery,* of South Bend, for appellee Graham.

*J. Clifford Potts,* of South Bend, for appellee Kercheval.

LEVINE, J.—This was an action to foreclose a real estate mortgage brought by the mortgagee as plaintiff (appellant herein) against the mortgagors and subsequent purchaser of the mortgaged real estate as defendants (appellees herein). This cause was commenced in the St. Joseph Superior Court No. 2. The cause appealed from the St. Joseph Probate Court was transferred from the Appellate Court to this court under the provisions of §4-209, Burns' 1946 Replacement.

Since a jurisdictional question has been properly raised in this matter, and since the decision on that question is paramount, it will be considered first.

Appellant here asserts that the St. Joseph Probate Court is without jurisdiction of the subject matter herein, and relies upon *Wedmore* v. *State* (1954), 233 Ind. 545, 122 N. E. 2d 1, in support of his position.

That case involved only the question of general criminal jurisdiction. In it we correctly held that (p. 552 of 233 Ind., p. 4 of 122 N. E. 2d) : "The St. Joseph Probate Court has no general criminal jurisdiction. . . ." No question concerning its jurisdiction in civil matters was presented in that case.

Appellant here attempts to apply the reasoning in the *Wedmore* case to the facts in the case at bar. We believe there is a clear distinction between the scope or extent of the jurisdiction which the Legislature intended to confer upon the St. Joseph Probate Court in criminal matters and that which it intended to confer in civil matters.

The St. Joseph Probate Court, being a creature of the Legislature, has only such jurisdiction as is granted by the act of its creation and such as is necessarily implied to enable it to function as a court. *Wedmore* v. *State, supra; State ex rel. Bradshaw* v. *Probate Ct.* (1947), 225 Ind. 268, 73 N. E. 2d 769.

As is said in *Wedmore* v. *State, supra* (p. 550 of 233 Ind., p. 4 of 122 N. E. 2d) :

"To ascertain the legislative intent we must consider the entire statute and the object sought to be attained thereby." Citing authorities.

As a further aid in determining the intent, we may resort to the Legislative Journals, of which we take judicial notice.

Chapter 333 of the Acts of 1945, establishing the St. Joseph Probate Court, was Senate Bill 200.

Section 10, Chapter 333 of the Acts of 1945, appeared as §10 in Senate Bill 200 as it was introduced and reported out of committee as follows:

"Sec. 10. Said probate court within and for the county for which it is organized shall have original, *exclusive* jurisdiction in all matters pertaining to the probate of wills; proceedings to resist probate of wills and proceedings to contest wills, the appointment of guardians, assignees, executors, administrators and trustees, and the administration and settlement of estates of minors, persons of unsound mind, aged, infirm and improvident persons, habitual drunkards, insolvents, and deceased persons; and of trusts, assignments, adoption and surviving partnerships, and all other probate matters, and shall have concurrent jurisdiction with the circuit court and the superior court of said county in all matters wherein the superior court of said county has jurisdiction."

When the bill was called for the third reading,[1] it

---

1. The following proceedings were had:

"Senator Armstrong called up Engrossed Senate Bill No. 200 for third reading, entitled:

. . .

"The bill was read third time by sections and placed upon its passage.

"SENATE MOTION

"Mr. President: I move that the Senate reconsider its action by which it placed Senate Bill No. 200 on third reading, and that Senate Bill No. 200 be placed back on second reading forthwith.

"STEMLE, Senator.

"SENATE MOTION

"Mr. President: I move the motion to reconsider be laid on the table.

"BEAMAN, Senator.

"Motion to table was lost.

"Motion to reconsider prevailed and the bill was placed back on second reading forthwith.

"SENATE BILL ON SECOND READING

"The Chair handed down Senate Bill No. 200 on second reading.

"SENATE MOTION

"Mr. President: I move to amend Senate Bill No. 200, page 4, section 10, line 2, by striking out the word 'exclusive,' and insert in lieu thereof the word, 'concurrent.'

"And on page 4, section 10, line 3, after the word 'jurisdiction,' insert the following words, 'with the superior courts of said county.'

"Reference being made to the printed bill dated February 14, 1945.

"GONAS, Senator.

was called back to second reading and amended by striking out the word "exclusive" in line 2 and inserting in lieu thereof the word "concurrent," and by inserting in line 3, after the word "jurisdiction," the words "with the superior courts of said county." Thus the first clause in the section was changed to read:

> "Said probate court within and for the county for which it is organized shall have original, concurrent jurisdiction with the superior courts of said county in all matters. . . ."

From the foregoing, it is clear that the author of Senate Bill 200 intended to create an additional court in St. Joseph County which would have exclusive jurisdiction in all probate and juvenile matters, and concurrent jurisdiction with "courts having criminal jurisdiction" in certain cases.[2]

However, the intent of the author does not necessarily determine the intent and purpose of the Legislature. It seems clear beyond dispute that by the adoption of the amendments above mentioned the Legislature intended to, and did, establish an additional court in St. Joseph County having concurrent jurisdiction with the circuit and superior court in all civil and probate matters wherein the superior

---

"SENATE MOTION
"Mr. President: I move this bill be made a special order of business for tomorrow afternoon at 2:00.
"MITCHELL, Senator.
"Motion prevailed.
"SPECIAL ORDER OF BUSINESS
"The Chair handed down Senate Bill No. 200 on second reading.
"Senator Gonas' motion of February 19th was re-read and adopted and Senator Kerr's name was added to the motion."

2. See *Wedmore* v. *State*, *supra*, for scope of criminal jurisdiction, and, by the last clause of §10, concurrent jurisdiction "with the circuit court and the superior court of said county in all [civil] matters wherein the superior court of said county has jurisdiction."

courts of the county have jurisdiction, with exclusive juvenile jurisdiction and limited criminal jurisdiction as defined in *Wedmore* v. *State, supra.*

The adoption of the amendment of §10 not only made all of the section following the word "matters" in line 4 mere surplusage, but also created some apparent conflict with some of the provisions in the subsequent sections of the act. We believe that when the context of the act and the object sought to be obtained are considered as a whole, it appears that the general words, "shall have concurrent jurisdiction," which appear at the end of §10, are not used in the sense that they restrict the series of specific words which have preceded, but should be given their full and natural meaning regardless of their connection with the series of specific words.

To hold that the court did not have concurrent jurisdiction with the superior court in civil matters would be to nullify the amendment which was made by the Senate on the second reading of the bill. We hold that it does have such concurrent jurisdiction.

Upon examination of the assigned error in overruling appellant's motion for a new trial, the only questions of merit are those of tender and payment, which are chiefly relied upon by appellant. We do not feel that there is merit in appellant's contention in this regard, and that the decree of the trial court is sustained by sufficient evidence and is not contrary to law.

Evidence of conversations by appellee Graham with witness, George A. Hogue, and other statements show that the plaintiff (appellant herein) refused, waived, and prevented tender. Under the circumstances of this cause, assumption that appellees were required to pay into court the pleaded

tender is unwarranted. There is no rule as to tender which is of universal application in all classes of cases.

> "And although the statutes imply the necessity of paying a tender into court in order to stop interest, the courts will apply the rules of equity when it is necessary, to do equal justice between the parties." 52 Am. Jur., Tender, §34, p. 239. See, also, *Doyle* v. *Ringo* (1913), 180 Ind. 348, 102 N. E. 18.

When the court in the case at bar found and determined the amount due and owing by the defendants (appellees herein), appellee Kercheval immediately paid said amount into court. The requirements of tender vary with facts. In this case where appellant, to whom tender was to be made, by his own conduct, prevented and refused the tender, he cannot now complain of that which he prevented and refused to permit being done.

In *Lahr* v. *Broyles* (1927), 86 Ind. App. 33, 37, 155 N. E. 709, 710, where a refusal to make settlement occurred, the court said:

> "Appellant says that there was no proper tender made at the time, but it is a well-established principle of law that where a tender or offer of settlement would be unavailing it is not necessary to make it."

See *Beatty* v. *Miller* (1911), 47 Ind. App. 494, 94 N. E. 897; *Cleveland, etc. R. Co.* v. *Anderson Tool Co.* (1913), 180 Ind. 453, 103 N. E. 102, and 52 Am. Jur., Tender, §4, p. 216.

The old common-law rule of tender has been modified by statute in Indiana, §2-2509, Burns' 1946 Replacement, which reads as follows:

> "Hereafter, in all cases where money is tendered in settlement of a demand, and the same is refused, and the money brought into court to keep the tender good, if the court or jury trying the case finds

that a less sum is due on the remand than that tendered and brought into court, the person refusing the tender shall receive no more of the sum paid into court than the court or jury trying the case finds is due him on the demand."

We do not find that appellant has shown prejudicial error in the admission of evidence, as raised in his other points, in view of the great preponderance of evidence admitted without objection, all of which sustains the finding and decree of the trial court.

It appears that this cause has been fairly tried, and the substantial rights of the parties thereto protected, and a just result reached; and, on the record here before us, the judgment of the trial court will not be disturbed. Sections 2-1071 and 2-3231, Burns' 1946 Replacement; *Deep Vein Coal Co.* v. *Ward, Admx.* (1919), 70 Ind. App. 161, 123 N. E. 228.

Judgment affirmed.

Henley, C. J., and Achor, Bobbitt, and Emmert, JJ., concur.

NOTE.—Reported in 126 N. E. 2d 1.