JEFFERSON AREA TEACHERS ASSOCIATION, APPELLEE, *v.*
LOCKWOOD, APPELLANT.

[Cite as Jefferson Area Teachers Assn. v. Lockwood (1982),
69 Ohio St. 2d 671.]

(No. 81-589—Decided March 9, 1982.)

*Green, Schiavoni, Murphy, Haines & Sgambati Co.,*

L.P.A., *Mr. Barry R. Laine, Mr. Dennis Haines* and *Mr. Hugh N. Helm, III,* for appellee.

*Mr. David T. Bryant, Mr. Rex H. Reed, Messrs. Harrington, Huxley & Smith* and *Mr. Jay Tims,* for appellant.

LOCHER, J., This cause presents one issue: whether Ohio law permits appellee to assess and collect from appellant the service fee stated in the agreement.* Appellant argues that the service fee does not apply to him because the board lacked statutory authority to agree to that provision and because he had executed a contract with the board prior to the execution of the agreement. We disagree.

This court has already held that a board of education may consummate a collective bargaining agreement. "A board of education is vested with discretionary authority to negotiate and to enter into a collective bargaining agreement with its employees, so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law." *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, paragraph one of the syllabus. Therefore, we limit our inquiry to the propriety of the service fee provision.

In *Rehor* v. *Case Western Reserve Univ.* (1975), 43 Ohio St. 2d 224, certiorari denied, 423 U. S. 1018, Charles F. Rehor had been a tenured member of the faculty of Western Reserve University ("Western Reserve"). Western Reserve had a retirement age of 70. After the federation of Western Reserve and Case Institute of Technology, the retirement age of faculty at Case Western Reserve University ("CWRU") was 65 with an option of continued employment until age 68. After Rehor turned 68, CWRU refused to reappoint him to the

---

* *Abood* v. *Detroit Bd. of Edn.* (1977), 431 U. S. 209, settles all relevant constitutional questions. In *Abood,* the United States Supreme Court upheld the constitutionality of a Michigan statute which permitted a local government employer and a union to enter into an "agency shop" arrangement under which " * * * every employee represented by a union—even though not a union member—must pay to the union, as a condition of employment, a service fee equal in amount to union dues." *Id.,* at 211. The court approved the statutory scheme at least to the extent that non-member contributions supported the union as an exclusive collective-bargaining representative. *Id.,* at 222-224. Therefore, we need not comment further on the constitutional issue which appellant raises.

faculty. This court held, in the first three paragraphs of the syllabus:

"1. Where a university faculty member is employed, using standard annual reappointment forms which do not set forth in full the terms and conditions of employment, the university's employment policies, rules and regulations become part of the employment contract between the university and the faculty member.

"2. The grant of tenure to a faculty member by a university does not preclude the university from thereafter changing the retirement age for all faculty members, including the tenured faculty member, provided the change is reasonable and uniformly applicable.

"3. A bylaw of a university, to the effect that its board of trustees shall from time to time adopt such rules and regulations governing the appointment and tenure of the faculty as the board deems necessary, includes a reservation of the right to change the university's retirement age." Each of these paragraphs of the syllabus provides guidance for the cause presently before this court.

R. C. 3313.20 provides, in pertinent part: "The board of education shall make such rules and regulations as are necessary for * * * the government of its employees * * * ." Furthermore, appellant expressly agreed "to abide by and maintain the rules and regulations adopted by the * * * [Jefferson] Board * * * ." In light of *Rehor,* therefore, the later execution of the agreement between the board and appellee does not necessarily exempt appellant from the terms of the agreement.

The board is empowered to enter into contracts, R. C. 3313.17, as well as to manage and control its public schools, R. C. 3313.47. See *Dayton, supra* (41 Ohio St. 2d, at 131). In this case, the board elected to negotiate exclusively with appellee. We cannot quarrel with the reasonableness of that managerial decision. Negotiating with an exclusive representative streamlines labor relations and advances the governmental interest of avoiding " * * * [t]he confusion and conflict that could arise if rival teachers' unions * * * each sought to obtain the employer's agreement * * * ." *Abood* v. *Detroit Bd. of Edn.* (1977), 431 U. S. 209, at 224.

After the agreement went into effect, appellant's salary increased from $14,880 to $16,440. His fringe benefits increased also. Appellee assessed a service fee of $83.13. In accordance with the agreement, this amount was 50 percent of that charged to members of the union and the same for *all* non-members. The board's change in policy was, therefore, "uniformly applicable." *Rehor, supra,* paragraph two of the syllabus. Appellee, therefore, is entitled to assess and collect from appellant the service fee established under the agreement.

Accordingly, we affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY and C. BROWN, JJ., concur.

HOLMES and KRUPANSKY, JJ., dissent.

HOLMES, J., dissenting. The collective bargaining agreement between the Association and the Board for 1978-1979, which was ratified by the Board on May 16, 1978, contains the following provision entitled "Service Fee for Representation":

"In recognition of the Association's services to the bargaining unit, all members of the bargaining unit shall either be members of the Association or share in the financial support of the Association by paying to the Association a service fee equivalent to the amount of dues uniformly required of members of the United Teaching Profession. * * * Bargaining unit members may either pay directly to the Association or by dues deduction made pursuant to a properly executed Payroll Deduction Authorization Form delivered to the school Board. The payment of dues or a service fee shall be a condition of employment."

A footnote to this provision reads:

"Members of the bargaining unit under contract during the 1977-78 school year, but not members of JATA, excluding those on leaves of absence, shall contribute 50% of the United Teaching Profession dues to JATA as a service fee."

This type of clause is commonly referred to as an "agency shop" clause. The phrase "condition of employment" as used

in this clause means that the employee's continued employment is conditional upon his paying the dues or fees involved.

In Ohio, the General Assembly has specifically provided by statute that an agency of the state, which includes school boards, is precluded from entering into an "agency shop" agreement with its employees. Accordingly, R. C. 9.41 provides, in pertinent part:

"Notwithstanding section 1321.32 of the Revised Code, the state of Ohio and any of its political subdivisions or instrumentalities may checkoff on the wages of public employees for the payment of dues to a labor organization or other organization of public employees upon written authorization by the public employee. Such authorization may be revocable by written notice upon the will of the employee."

By adopting R. C. 9.41, the General Assembly has evidenced its intent that state employers may deduct fees, such as these, from an employee's wages *only* upon the execution of the employee's revocable authorization. In other words, R. C. 9.41 precludes an agency shop.

The majority sanctions a result which the General Assembly has forbidden, without even discussing R. C. 9.41. By allowing the appellee to enforce a clause in the master contract which the board of education could not directly enforce elevates form over substance.

In *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127, this court did, as stated by the majority, hold, in paragraph one of the syllabus, that school boards have discretionary authority to bargain with representatives of their employees, and that school boards may agree to a binding collective bargaining agreement " * * * so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law." In the same manner, this court stated in the opinion, at pages 134-135:

"Accordingly, it is the judgment of this court that the agreement herein is a valid and enforceable contract, and that the board is obligated to arbitrate any grievance arising thereunder where the grievance involves the application or interpretation of *a valid contractual term* and the arbitrator is specifically prohibited from making any decision which is in-

consistent with the terms of the agreement or *contrary to law*." (Emphasis added.)

Implicit in the opinion in *Dayton* is the corollary proposition that invalid terms of a collective bargaining agreement or those which are contrary to law are not enforceable.

The "condition of employment" language in this agreement being unlawful and void in Ohio, the appellant teacher should have prevailed.

I would reverse the judgment of the Court of Appeals.

KRUPANSKY, J., concurs in the foregoing dissenting opinion.