**FORT WAYNE EDUCATION ASSOCIA- TION, INC. Appellant (Plaintiff Below),**

v.

**Henrietta M. GOETZ, et al. Appellees (Defendants Below).**

**No. 4–1281A218.**

Court of Appeals of Indiana, Fourth District.

Dec. 30, 1982.

Rehearing Denied Feb. 3, 1983.

Richard J. Darko, Bernard L. Pylitt, Bayh Tabbert & Capehart, Indianapolis, Frederick Tourkow, Tourkow, Danehy, Crell, Good & Rosenblatt, Fort Wayne, for appellant.

David T. Bryant, National Right to Work Legal Defense Foundation, Inc., Springfield, Va., Daniel J. Skekloff, C. David Peebles, Peebles, Rogers & Hamilton, Fort Wayne, for appellees.

MILLER, Judge.

Plaintiff-appellant Fort Wayne Education Association, Inc. (Association) is appealing the judgment rendered against it in five small claims actions it had instigated for the collection of representation fees from nonmember teachers employed by Fort Wayne Community Schools. Each action was premised on a provision in the Master Contract negotiated by the Association, as exclusive representative of the Fort Wayne teachers, with the Board of School Trustees (Board). The pertinent contract clause provided a non-mandatory payroll deduction system for the collection of a representation fee, such fee being an assessment by the Association against teachers who were not members of the organization for the purpose of defraying the costs of collective bargaining, grievance adjustment, contract administration and other expenses related to services rendered as their exclusive representative. Essentially, the fee was a sum slightly less than regular membership dues paid to the Association and its parental affiliates, Indiana State Teachers Association and National Education Association, reflecting a deduction for amounts used for political purposes. The five nonmember teachers totally refused to pay the representation fee, and the Association brought suit against them, all five actions being consolidated on motion of the teachers.

The parties stipulated to certain facts (which the court adopted as its sole findings of facts) upon which the trial court rendered judgment for the teachers, concluding Indiana does not provide statutory authorization for an agency shop provision and, further, the Association can not reap payment on the basis of unjust enrichment.

We reverse.

## ISSUES

The Association claims the trial court erred in the following respects:

1) The trial court's judgment is contrary to law inasmuch as the Indiana General Powers Act, Ind.Code 20–5–1–1 *et seq.,* impliedly authorized the Board to enter into a bargaining agreement with the Association containing a provision for the payment of a representation fee.

2) The trial court's judgment is contrary to law because the Certificated Educational Employees Bargaining Act, Ind. Code 20–7.5–1–1 *et seq.* did not abridge the Board's power to enter such a contract.

The teachers have also offered for our consideration additional grounds for affirmance:

1) The provision is unconstitutional under the First Amendment right to freedom of association.

2) The Association failed to carry its burden of proof that the amounts it attempted to collect from the teachers would be used only for constitutionally permissible (non-political) purposes, and, thus, it can not prevail. (Inherent in the teachers' argument is the proposition that nonmembers can not be required to pay the fee and then contest this particular issue later in the Association's internal rebate procedure.)

3) The provision in the Master Contract is so vague and ambiguous it is unenforceable.

## FACTS

The following are the facts which the parties stipulated and the trial court adopted in its judgment:

"1. FWEA is the recognized exclusive representative of a unit of employees employed by the Board of School Trustees of Fort Wayne Community Schools (Board).

2. Such recognition is pursuant to the provisions of the 1973 Certificated Educational Employee Bargaining Act (CEEBA), I.C. 20–7.5–1–1, et seq.

3. The Defendants are employees within the unit of employees represented by the FWEA but they are not members of FWEA.

4. FWEA and the Board have entered into a collective bargaining agreement (Agreement) for the period September, 1980 through August, 1983, a copy of which is attached hereto as Exhibit A and made a part hereof. Article XXIII G of the Agreement provides:

### G. REPRESENTATION FEE

1. The Board recognizes as valid, fair and equitable the Association's claim that all members of the bargaining unit, even those that are not members of the Association, have an obligation to pay fair value for services rendered on their behalf by the Association, by the Indiana State Teachers Association, and by the National Education Association, and for their proportionate part of the costs of collective bargaining, contract administration, grievance adjustment, and other duties and services related to being exclusive representative.

2. The Board considers it proper for the Association to charge each non-member of the Association, who is also a member of the bargaining unit, and for each such non-member to pay to the Association a representation fee, to be determined solely by the Association but in a manner consistent with the services rendered and costs incurred on behalf of all bargaining unit members. Such representation fee may then be allocated between the Association, the Indiana State Teachers Association, and the National Education Association, as the Association shall deem appropriate.

3. On or before October 10, of each year, the Association shall provide the Board with a list of bargaining unit members who are not also Association members, and the Board shall ask each such person to voluntarily submit, within two (2) weeks, a payroll deduction authorization form, as set forth in

the Appendix to this Contract. The Board shall then deduct the representation fee in ten (10) equal installments from the payroll of each person who submits an authorization. The Board shall inform the Association of all members of the bargaining unit who refuse to sign such an authorization form or who revoke an executed form.

4. The Association, on its own and not on behalf of the Board, may take such action as it may deem appropriate to collect its representation fee from those bargaining unit members who refuse to authorize payroll deductions for or who otherwise refuse to pay the representation fee. (Pages 50–51 of the Agreement).

5. The Defendants have declined to sign a payroll deduction authorization form or to otherwise pay a representation fee to the Plaintiff.

6. The Defendants receive the salary and fringe benefits set forth in the agreement and are subject to the working conditions established therein. It is not known what the salary, fringe benefits and working conditions would be for these defendants if FWEA were not the recognized exclusive representative. The recognition of the FWEA as the exclusive representative precludes the defendants from dealing individually with the Board except as may be authorized by CEEBA–2(o) and 6(a), on the matters which are the subject of collective bargaining and discussion set forth in CEEBA 4 and 5.

7. FWEA is affiliated with the Indiana State Teachers Association (ISTA) and the National Education Association (NEA).

8. For school year 1980–81 a member of the bargaining unit who is a member of FWEA pays dues in the amount of $212.00 per year. These dues are distributed as follows:

    FWEA  –  $34.00
    ISTA  –  133.00
    NEA  –  45.00

9. In this action FWEA seeks to recover a representation fee from each of the defendants in the amount of $204.60 for school year 1980–81. This fee was determined internally by FWEA and its affiliates, without any participation by the Board or the Defendants, pursuant to the provisions of the paragraph XXIII G2 of the Agreement between FWEA and the Board. If the representation fee is recovered, it will be distributed as follows:

    FWEA  –  $32.00
    ISTA  –  131.60
    NEA  –  41.60

10. The difference between the $212 per year in dues for a member of the FWEA and the $204.60 representation fee constitutes an estimate by the FWEA, the ISTA, and the NEA, as to the portion of their dues which will be utilized during the relevant fiscal year for 'political activities' as defined in the rebate policies attached hereto. The estimates were made internally by the three organizations.

11. FWEA, ISTA and NEA have adopted Rebate Policies for those non-members subject to a service or representation fee who object to the expenditure of any portion of such fee for 'political activities.' Copies of these policies are attached hereto as Exhibits B, C and D, respectively. FWEA, ISTA and NEA have not adopted any rebate procedures other than those attached hereto.

12. The defendants have notified FWEA, ISTA and NEA that, if they are required to pay a representation fee to these organizations, they object to their fees being used for any purposes other than collective bargaining, contract administration and grievance processing."

## DISCUSSION

We are presented with an issue that has generated a great deal of controversy in the area of labor relations, in both private and public sectors. That issue is whether non-union members can be compelled to pay their share of the costs generated by the labor organization which represents their interests in dealing with management. Typically, these fee-payment arrangements

are negotiated into collective bargaining agreements governing the relationship between the employer and the employees. Such provisions, commonly denoted as union security agreements, are generally viewed as promoting stability within the working relationship. *See NLRB v. General Motors Corp.,* (1963) 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670; R. Gorman, Basic Text on Labor Law: Unionization and Collective Bargaining 639 (1976).

Here, the Association negotiated what the parties refer to as an "agency shop" provision. An agency shop is defined as requiring, *as a condition of employment,* nonunion member employees to pay fees to a union for services rendered as their bargaining representative but not otherwise requiring membership. *See Cooper v. General Dynamics, Convair Aerospace Division,* (5th Cir.1976) 533 F.2d 163, *cert. denied* (1977) 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1091; *Gorman, supra,* at 641–42; G. Rose, Understanding Labor Relations 197 (1962). Thus, in the case before us, one must necessarily note that *nowhere* in this particular agreement is a teacher's continued employment conditioned on payment of the representation fee. Rather, the fee provision manifests only the Board's recognition of the Association's claim for equitable compensation and legitimates that claim solely to the extent the Board will provide for payroll deductions for the convenience of the Association *if voluntarily authorized by each nonmember.* Thus, we are dealing with a modified form of agency shop.[1] The Fort Wayne teachers preliminarily challenge the constitutionality of the affixation of such an obligation to their jobs.

### 1. *Constitutionality*

█ It can no longer be gainsaid that public school teachers possess the constitutional right to associate in labor organizations, as provided by the First Amendment. *Greminger v. Seaborne,* (8th Cir.1978) 584 F.2d 275; *Orr v. Thorpe,* (5th Cir.1970) 427 F.2d 1129; *McLaughlin v. Tilendis,* (7th Cir. 1968) 398 F.2d 287; *cf. Abood v. Detroit Board of Education,* (1977) 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 ("Our decisions establish with unmistakable clarity that the freedom of an individual to associate for the purpose of advancing beliefs and ideas is protected by the First and Fourteenth Amendments." *Id.* at 233, 97 S.Ct. at 1798, and cases cited therein.) Equally clear is an individual's right of choice not to associate himself with a particular organization or idealogy. *Id.* at 234–35, 97 S.Ct. at 1799; *Wooley v. Maynard,* (1977) 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752; *Gavett v. Alexander,* (D.D.C.1979) 477 F.Supp. 1035. However, in the action herein, the Master Contract provision does not require membership in the Association. It merely requires that nonmember teachers carry their financial burden in return for the benefits they receive from the Association's activities as their exclusive representative. This monetary assessment is not, of itself, unconstitutional. As the United States Supreme Court has stated, and recently reaffirmed, "We . . . hold that the requirement for

---

1. Actually, the provision is more accurately characterized as a fair share provision:

   "A fair share clause defines actual (pro rata) costs of the union's services rather than union dues. This actual costs fee can be more or less than dues. Both the agency shop and the fair share arrangement compensate the union for providing, as required under its duty of fair representation, full and equal protection to all employees in the bargaining unit, regardless of union membership status." (Footnotes omitted.)

   Zwerdling, *The Liberation of Public Employees: Union Security in the Public Sector,* 17 B.C. Indus. & Com.L.Rev. 993, 1008 (1976).

   This clause is also closely akin to what is known as a dues checkoff provision which "in itself requires no one to join a union or retain membership in a union, but simply provides that the employer shall deduct from the earnings of union members (just as it would for taxes, insurance premiums or charitable contributions) the periodic membership dues and shall pay that amount directly to the union." *Gorman, supra,* at 642; Annot., 95 A.L.R.3d 1102 (1979). This type of union security provision is specifically allowed by Indiana statute. Ind.Code 22–2–6–2(c)(9) authorizes the assignment of wages, pursuant to a properly executed form, "to any . . . associations of employees of [the] employer organized under any law of this state or of the United States."

financial support of the collective-bargaining agency by all who receive the benefits of its work ... does not violate ... the First ... Amendmen[t]." *Railway Employees' Department v. Hanson*, (1956) 351 U.S. 225, 238, 76 S.Ct. 714, 721, 100 L.Ed. 1112; *Abood v. Detroit Board of Education, supra*, 431 U.S. at 219, 97 S.Ct. at 1791.[2]

■ The rationale in support of agency shop agreements is the elimination of "free riders," those nonmembers who partake of the benefits engendered by their labor representative without paying their share of the costs. *NLRB v. General Motors Corp., supra; International Association of Machinists v. Street*, (1961) 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141. This policy was recently articulated in the public school teachers' case of *Abood:*

"The designation of a union as exclusive representative carries with it great responsibilities. The tasks of negotiating and administering a collective-bargaining agreement and representing the interests of employees in settling disputes and processing grievances are continuing and difficult ones. They often entail expenditure of much time and money. See *Street*, 367 U.S., at 760, 81 S.Ct., at 1795. The services of lawyers, expert negotiators, economists, and a research staff, as well as general administrative personnel, may be required. Moreover, in carrying out these duties, the union is obliged 'fairly and equitably to represent all employees ..., union and nonunion,' within the relevant unit. *Id.* at 761, 81 S.Ct., at 1796. A union-shop arrangement has been thought to distribute fairly the cost of these activities among those who benefit, and it counteracts the incentive that employees might otherwise have to become 'free riders'—to refuse to contribute to the union while obtaining benefits of union representation that necessarily accrue to all employees. *Ibid.;* see *Oil Workers v. Mobil Oil Corp.*, 426 U.S. 407, 415, 96 S.Ct. 2140, 2145, 48 L.Ed.2d 736; *NLRB v. General Motors*, 373 U.S. 734, 740–741, 83 S.Ct. 1453, 1458, 10 L.Ed.2d 670."

*Abood, supra*, 431 U.S. at 221–22, 97 S.Ct. at 1792 (footnote omitted). This justification for agency shops, however, is of no avail unless authorized by statute because our General Assembly has particularly prescribed the regulation of teachers' labor relations.

**2. Indiana General Powers Act**

Indiana's General Powers Act, Ind.Code 20–5–1–1[3] *et seq.*, grants to school corporations the power to conduct the educational program in their respective districts. Ind. Code 20–5–2–1 is a general grant, and Ind. Code 20–5–2–2 enumerates a nonexclusive list of specific powers. *See* Ind.Code 20–5–2–2(19). Within this specific list is the power to prepare rules and regulations for the governance of employees. Ind.Code 20–5–2–2(17). A sister state recently held this authorization was sufficient to uphold a fee arrangement as is present here. In *Jefferson Area Teachers Asso. v. Lockwood*, (1982) 69 Ohio St.2d 671, 433 N.E.2d 604, *U.S. appeal pending*, a teacher was held liable on a small claims complaint for collection of a service fee equal to 50% of dues. The court held that inasmuch as the board of education had statutory authority to make rules and regulations for the governance of its employees and as the teacher had signed a contract expressly agreeing to abide by such rules, the service fee in the Master Agreement was enforceable.

Our General Powers Act also bestows upon local school boards the ability to

---

**2.** It can not be disputed that the *Hanson* case dealt with the issue in the context of the Railway Labor Act which generally deals with employment in the private sector. However, the union security provision in that case resulted from a federal statute, clearly implicating constitutional rights. *Hanson, supra*, 351 U.S. at 232, 76 S.Ct. at 718. The *Abood* Court thus found the reasoning of *Hanson* clearly applicable to constitutional arguments made by public school teachers. *Abood, supra*, 431 U.S. at 227, 97 S.Ct. at 1795.

**3.** The 1982 Indiana Code provisions are in slight variance to those statutes in effect in 1980 when suit was brought. However, such differences are negligible and do not affect the result in this action.

"exercise any other power and make any expenditure in carrying out its general powers and purposes . . . or in carrying out the powers delineated in this section which is reasonable from a business or educational standpoint in carrying out school purposes of the school corporation. . . ."

IC 20–5–2–2(19). Further, the Act "shall be supplemental and in addition to all other laws, Ind.Code 20–5–6–2, and "shall be liberally construed to permit the governing body of school corporations to conduct its affairs in a manner consistent with sound business practice. . . ." Ind.Code 20–5–6–3. It is therefore apparent the legislature endowed Indiana school boards with a great amount of discretion in running their individual systems. However, it is not apparent from the statute that the Fort Wayne Board abused that discretion when it entered into the agency shop agreement with the Association. In fact, courts acknowledge the sound business practice inherent in negotiating such a provision. *See, e.g., Abood, supra,* 431 U.S. at 221–22, 97 S.Ct. at 1792. In addition, we must also consider statutes which may abridge the Board's discretion, more particularly, the Certificated Educational Employee Bargaining Act (CEEBA).

### 3. *Certificated Educational Employee Bargaining Act*

CEEBA, codified at Ind.Code 20–7.5–1 *et seq.,* is prefaced by a long declaration of the legislature regarding labor relations in school corporations. Ind.Code 20–7.5–1–1. This proclamation recognizes the right of school employees to organize and accepts the principles and procedures of collective bargaining, both measures being viewed as conducive to harmonious working relationships. A similar legislative policy statement was one of the primary bases for sustaining the imposition of a financial obligation upon non-union police officers in *Tremblay v. Berlin Police Union,* (1968) 108 N.H. 416, 237 A.2d 668. The court in that case upheld the contract provision, despite a statute expressly prohibiting coercion to become a member of a labor organization, because of the legislature's public policy pronouncement and the absence of a statute prohibiting union shops, and because the ultimate decision to hire and fire personnel and other such discretionary functions remained in the employer police department. This is not dissimilar to the situation in our case.

After the Indiana General Assembly's prefatory policy statement in IC 20–7.-5–1–1, begins the list of the specific statutory rights and responsibilities of the employers and employees, foremost being the duty to bargain collectively. Ind.Code 20–7.5–1–3. Only "salary, wages, hours and salary and wage related fringe benefits" are mandatory subjects of bargaining, Ind.Code 20–7.5–1–4; however, one of the mandatory subjects of discussion, which *may* be bargained, is working conditions. Ind.Code 20–7.5–1–5. And, in the private sector, an agency shop provision, generally defined as a "condition of employment," is just such a working condition. *See NLRB v. Andrew Jergens Co.,* (9th Cir.1949) 175 F.2d 130, *cert. denied* 338 U.S. 827, 70 S.Ct. 76, 94 L.Ed. 503; *International Union of United Association of Journeymen & Apprentices of Plumbing & Pipefitting Industry (International Paper Co.),* (1980) 252 N.L.R.B. 1299 *aff'd* (D.C.Cir.1982) 675 F.2d 1257, *cf. NLRB v. General Motors Corp., supra,* 373 U.S. at 745, 83 S.Ct. at 1460 (employer has duty to bargain on subject of agency shop proposal). In a recent public sector case, the California Court of Appeals affirmed the validity of an agency shop provision because it was considered a working condition and the legislature had declared working conditions to be mandatory subjects of bargaining. *Rae v. Bay Area Rapid Transit Supervisory & Professional Association,* (1980) 114 Cal.App.3d 147, 170 Cal.Rptr. 448. The court expressly held the nonmember's argument that an agency shop must be expressly authorized was incorrect; rather, such authorization could be inferred. Again, this case is analogous to the Fort Wayne case here.

In addition to all of the foregoing, Indiana law explicitly provides the right to

"form, join or assist employee organizations" to school employees, Ind.Code 20–7.-5–1–6(a), and declares it an unfair practice for a school employer to encourage or discourage *membership* in any such organization through discrimination of any sort. Ind.Code 20–7.5–1–7(a)(3). Conspicuously absent is any statutory right to refrain from "assisting" or "participating" in a labor organization. Statutory phraseology such as this was the foundation for quashing agency shop clauses in some situations. *City of Hayward v. United Public Employees, Local 390,* (1976) 54 Cal.App.3d 761, 126 Cal.Rptr. 710 (statute forbade forced "participation" in unions as well as upholding the right to *individually* represent oneself. This was not the BART Act construed in *Rae v. Bay Area Rapid Transit Supervisory & Professional Association, supra.); New Jersey Turnpike Employees' Union, Local 194 v. New Jersey Turnpike Authority,* (1971) 117 N.J.Super. 349, 284 A.2d 566, *aff'd,* (1973) 123 N.J.Super. 461, 303 A.2d 599, *aff'd,* (1974) 64 N.J. 579, 319 A.2d 224 (right to refrain from "assisting" union); *Farrigan v. Helsby,* (1973) 42 A.D.2d 265, 346 N.Y.S.2d 39 (right to refrain from "participating" in union). These cases are inapplicable in Indiana where the statute declares it an unfair practice to "encourage or discourage *membership* in any school employee organization through discrimination in regard to hiring or tenure of employment or any term or condition of employment...." IC 20–7.5–1–7(a)(3) (emphasis added.) This clause is not as restrictive as those in the California, New Jersey and New York statutes construed in the above-cited cases, statutes apparently seeking to incorporate right-to-work provisions in public employment laws.

■■■ In this context, we must remember that Indiana's right-to-work law itself,

Burns' Ann.St. § 40–2701 *et seq.,* was repealed in 1965.[4] 1965 Ind.Acts, ch. 1. This law had provided "the right to refrain from forming, joining, continuing membership in, or *assisting* labor organizations." 1957 Ind. Acts, ch. 19 (emphasis added). Nevertheless, this court ruled the right-to-work law itself did not ban agency shop agreements in Indiana. *Meade Electric Co. v. Hagberg,* (1959) 129 Ind.App. 631, 159 N.E.2d 408. No comparable legislation has since been re-enacted for the private sector, and CEEBA was enacted for teachers in 1973, with only the provision that *membership* can not be required for school employees. IC 20–7.-5–1–7(a)(3). The statutes are silent with reference to any other forced participation in a labor organization. Even those laws for the private sector speak explicitly only of the right to organize, and not the right to refrain from such association. Ind.Code 22–6–1–4, 22–7–1–2. Neither is there any express statement regarding union security clauses, although it is implicit the National Labor Relations Act is effective in Indiana, IC 22–7–1–2, which act *does* provide for such agreements. The Indiana legislature, while not *expressly* allowing agency shop provisions in CEEBA, must have been aware of the repeal of Indiana's right-to-work law when they passed the school employees' statute eight years later.[5] Their failure to impose a similar right-to-work provision in CEEBA is indicative that anything less than union membership is certainly allowable, particularly in view of the language in IC 20–7.5–1–7(a)(3) which restricts unfair practices to coercion in *membership* only.

The teachers strenuously argue the Fort Wayne Board and the Association could not enter into this agency shop agreement without express statutory permission. How-

---

4. Contrary to the teachers' assertion at oral argument Indiana's right-to-work law was applicable to *any* employer, not just those in the private sector.

5. Similar reasoning was used by this Court in interpreting the right-to-work law itself. In *Meade Electric Co. v. Hagberg,* (1959) 129 Ind. App. 631, 159 N.E.2d 408, we held the specific

language of the statute did not prohibit an agency shop clause. Further, we stated the legislature must surely have been aware of more restrictive right-to-work laws passed in other states, and its failure to follow such acts and expressly prohibit agency shops was indicative of its intent to ban only forced *membership* union security agreements.

ever, their cited cases in support of this contention are not apropos to the circumstances here. In *Smigel v. Southgate Community School District,* (1972) 388 Mich. 531, 202 N.W.2d 305, the court held the absence of a statutory provision was fatal to the inclusion of a union security clause in a teacher's contract. The reasoning was based on a comparison of Michigan's nearly identical private and public labor relations laws which revealed the legislature had included the proper authorization in the private sector act but failed to so include for the public sector. The court construed this dissimilarity as the legislature's prohibition of union security for teachers' contracts. Indiana's private sector laws do not expressly provide for union security either, except by incorporation of the National Labor Relations Act. Therefore, *Smigel* is not authority here. (We also note *Smigel* is no longer the law in Michigan since the adoption of new public employment laws allowing union security. *See Abood, supra.)* *City of Hayward, supra,* also cited by the teachers, followed similar syllogization as *Smigel;* however, the later case of *Rae, supra,* decided by the same court, expressly disavowed the necessity of express statutory authorization. *Churchill v. S.A.D. # 49 Teachers Association,* (1977) Me., 380 A.2d 186, signified the Fort Wayne teachers' proposition to the extent that an *agency shop* clause requiring payment of fees equal to dues is invalid in the absence of express statutory provision. The municipal employees' law involved forbade the forced participation in labor organizations. The efficacy of this case is questionable in the wake of the same court's later decision in *Opinion of the Justices,* (1979) Me., 401 A.2d 135, wherein the court, ruling on the state employees' act, stated such express authorization was unnecessary in a *fair share* provision, similar to the one here, negotiated

between the Governor and the State Employees Association. The Justices held the statutory obligation of employees to accept the services of the bargaining agent and of the association to fairly represent all employees in the bargaining unit established a mutuality of obligation mandating the imposition of service fees upon nonmembers.

The teachers have also relied upon a recent Indiana case bearing directly upon the subject of agency shop clauses in teachers' contracts.[6] It is factually and legally distinguishable from the case here. In *Anderson Federation of Teachers, Local 519 v. Alexander,* (1981) Ind.App., 416 N.E.2d 1327, the clause in question made payment of service fees a condition of employment— teachers failing to pay were subject to discharge. Chief Judge Buchanan properly declared this provision invalid because school corporations can not bargain away the terms of teacher discharges. However, he went on to say, "[we do not] suggest that such agreements between schools and teachers' unions are invalid *per se.* We say only that construing the provisions of the CEEBA *in toto,* they forbid school corporations to make *any* collective bargaining agreement—for union security purposes or otherwise—in which the schools undertake the mandatory discharge of a given class of teachers." *Id.* at 1333. (Emphasis in original). The Fort Wayne Master Contract does not make the payment of dues a condition of employment. Therefore, the *Anderson* case is inapplicable.

Because the statutes have been questioned, we also feel compelled to examine the legislative history of CEEBA to determine the intent of the General Assembly with regard to teachers' labor relations and union security. For this, we resort to the Legislative Journals. *See Schulz v. Graham,* (1955) 234 Ind. 243, 126 N.E.2d 1;

---

**6.** The teachers have referred us to a second Indiana case on agency shop clauses, but it can not be relied upon as precedent because there has not yet been an adjudication on the merits. This second case is *Perry v. City of Fort Wayne,* (N.D.Ind.1982) 542 F.Supp. 268. The posture of the case upon publication was merely the granting of the employee's motion for preliminary injunction to prevent the City of Fort Wayne and the union from conditioning her employment upon a failure to pay the agency fee. The court did not reach the merits. Secondly, this case is distinguishable, like *Anderson, supra,* in that the fee arrangement was a condition of employment.

*Hurwich v. Zoss,* (1976) 170 Ind.App. 542, 353 N.E.2d 549. CEEBA made its legislative passage as Senate Bill 255. An April 5 entry in the House Journal of 1973 reveals the House voted to amend Senate Bill 255 as follows (among other changes):

> "Provided, further, That no agreement shall be lawful and binding if it contains provisions requiring any person covered by the contract to become a member of or to retain membership in *or to pay money to the organization in lieu of membership as a condition of employment;* and, provided, further, no agreement shall be in violation of the wage assignment provisions of I.C. 1971, 22–2–6–2."

Indiana House Journal, 1973 Regular Session, 1212. (Emphasis added). The Senate did not concur in the amendments of that date and proposed a conference committee to further discuss the bill. *Id.* at 1289. The House later adopted the committee's report which accepted all the House amendments *except* the provision set forth above and which requested the House to withdraw said amendment. *Id.* at 1303. The final statute, of course, did not include such a provision prohibiting an agency shop arrangement. We find this legislative background most persuasive in determining the Indiana General Assembly did not intend to prohibit contract clauses as negotiated here.

[redacted] After searching inquiry into the pertinent cases and Indiana statutes, we hold the Fort Wayne Board and the Association had the power to negotiate the agency shop clause in question, which clause recognized nonmember teachers' responsibility to pay a representation fee to the Association and did not delegate or abridge the Board's discretionary authority to manage the employment relationships with such nonmembers.

4. *Questions Involving Political Expenditures*

[redacted] We emphasize the fact the contract here does not force nonmembers to pay for anything other than their share of the exclusive representative's costs of providing services for the bargaining unit. They can not be required to pay for political activities. *Brotherhood of Railway & Steamship Clerks v. Allen,* (1963) 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235; *Abood, supra.* The teachers herein have triggered a scrutiny of this issue—they need only object in general terms to the manner in which the funds are used in order to place the burden upon the Association to show nonpolitical use of the funds. *Id.* 431 U.S. at 239, 97 S.Ct. at 1801; *Allen, supra,* 373 U.S. at 118, 122, 83 S.Ct. at 1163; *Ball v. City of Detroit,* (1978) 84 Mich.App. 383, 269 N.W.2d 607. Here, the case never reached this stage of adjudication because the trial court declared the provision invalid. However, the parties stipulated to the amount used for political activities. Joint Stipulation of Facts # 10, *supra.* The teachers' contention the Association has failed to carry its burden of proof is therefore without merit.

[redacted] Finally,[7] the teachers present us with one last issue. They recognize the Association has formulated an internal rebate procedure whereby teachers can contest the use of funds. This procedure is engaged upon payment to the organization; then, the nonmember teacher petitions for a rebate of improperly expended assessments. The teachers contend they cannot be compelled to submit to procedures in an organization which they have refused to join. This argument was evidently presented in order to forestall any such contentions by the Association in its reply brief. First of all, we reiterate that the teachers have factually agreed to the amount properly spent by the Association. Next, we note the Association has never insisted the teachers use this internal rebate procedure so the argument is akin to Don Quixote tilting with

7. The teachers attempted to argue the assessment provision is vague and ambiguous and, therefore, unenforceable. They have failed to present us with any cogent argument in this regard, particularly by wholly neglecting to specify the ambiguity. We do not find the provision unclear. Failure to present cogent argument waives the issue. Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).

windmills. Lastly, we feel compelled to point out the United States Supreme Court, while not requiring nonmembers to exhaust internal union remedies, has expressed extreme displeasure with the tack the teachers herein are arguing:

"The courts will not shrink from affording what remedies they may, with due regard for the legitimate interests of all parties; *but it is appropriate to remind the parties of the availability of more practical alternatives to litigation for the vindication of the rights and accomodation of interests here involved.*" (Emphasis added.)

*Allen, supra,* 373 U.S. at 124, 83 S.Ct. at 1164; *accord, Abood, supra,* 431 U.S. at 240, 97 S.Ct. at 1802.

For all the foregoing reasons, we reverse the judgment of the trial court and direct it to enter judgment in favor of the Association.

YOUNG, P.J., and CONOVER, J., concur.