Bruce I. OLIVER, Mary S. Simler, Thomas J. Pabst and John F. Sawyer, Plaintiffs,

v.

FORT WAYNE EDUCATION ASSOCIATION, INC., Fort Wayne Community Schools and Ronald G. Kleopfer, J.H. Towels, Stephen Corona, Helen P. Brown, Richard T. Doermer, Ann K. Silletto and Eugene A. Yergens in their capacity as members of the Board of School Trustees For the Fort Wayne Community Schools, Defendants.

No. F 86–101.

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 17, 1986.

---

* This Memorandum of Opinion was prepared by William G. Somerville, III, Law Clerk, in which the Court fully concurs.

William T. Hopkins, Jr., Gallucci, Hopkins & Theisen, Fort Wayne, Ind., for plaintiffs.

James P. Fenton, Bert J. Dahm, Joshua I. Tourkow, Frederick R. Tourkow, Fort Wayne, Ind., Richard J. Darko, Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

This case is before the court on the defendant's, Fort Wayne Education Association, Inc. (FWEA), Motion to Dismiss or Abstain filed on July 14, 1986. The motion sought dismissal pursuant to Rule 12(b)(6) of the federal Rules of Civil Procedure or, in the alternative, a stay of proceedings in this case pending resolution of the issues in the state court actions. The plaintiffs filed a memorandum in opposition on July 29, 1986. Subsequently, during a pretrial conference the court ordered the defendant to file any supplemental briefs on the abstention issue by October 1, 1986, and the plaintiffs to respond by November 3, 1986. Oral argument on the abstention issue was heard on December 5, 1986. The matter is now ripe for decision.

As in most abstention cases the procedural facts are critical to the abstention analysis. In this case the facts began to develop when the Fort Wayne Community School Corporation (FWCS) and the FWEA entered into a collective bargaining agreement which permitted the FWEA, the exclusive bargaining representative, to charge a fair share representation fee to members of the bargaining unit who chose not to join the FWEA. The bargaining agreement permits payroll deductions only after a teacher voluntarily authorizes the FWCS to make a payroll deduction. In Indiana, there is no statutory or other basis which the FWEA may utilize to compel deduction of fair share representation fees from a teacher's salary, until a judgment has established the amount of the debt. Consequently, after several years of non-payment the FWEA filed several suits in state court requesting a judgment to establish the amount of the debts owed by the teachers who did not pay their fair share representation fee. When this case was filed there were four cases which had been filed and were pending in the state courts: cause numbers CC–83–1304 and CC–83–1305 filed on August 8, 1983, in the Allen Circuit Court; and cause numbers C–85–274 and C–85–275 filed on August 20, 1985 in Allen Circuit Court and Dekalb Circuit Court but venued to Noble Circuit Court. CC–83–1304 and CC–83–1305 were consolidated, and the defendants filed an answer and counterclaim on October 27, 1983. The counterclaim alleged in pertinent part:

22. This counterclaim arises under 42 U.S.C. § 1983. The Courts of Indiana have jurisdiction over claims arising under the United States Constitution. The Courts of Indiana also have jurisdiction over claims arising under the Constitution of the State of Indiana.

and

32. As a result of the foregoing, Defendants have been deprived of rights, privileges and immunities secured to the Defendants by the Constitution of the United States, in particular, Defendants' rights of freedom of association and speech under the First Amendment of the United States Constitution; and the right not to be deprived of property without due process of law, under the Fifth and Fourteenth Amendments of the United States Constitution; as well as rights secured by the Indiana Constitution and defendants have been damaged thereby.

Similarly, in the cases venued to Noble Circuit Court the defendants' answers filed on October 15, 1985 and October 17, 1985 included the following affirmative defense:

4. Plaintiff's collection and use of fees allegedly owed by Defendant for political and ideological purposes to which Defendants object, is in violation of and barred by Defendants' rights of free speech and political expression as guaranteed by the First Amendment to the United States Constitution and Article 1, § 9 of the Constitution of Indiana.

In Allen Circuit Court, Cause No. CC–83–1304 a "trial to a non-advisory jury over nine (9) days resulted in favorable verdicts to Plaintiff but for sums which were less than those which Plaintiff charged and sought in its prayer to collect on issues framed in the Answers that, *inter alia,* the fees were in excess of costs and expenses authorized in the collective bargaining agreement and in law for contract adjustment, collective bargaining and grievance adjustment in the local bargaining unit." The jury returned the verdict in March 1985. On March 17, 1986 the Plaintiffs filed their claims in Federal Court. The complaint in this case alleged in pertinent part:

Defendants FWCS and its Board of School Trustees are depriving the Plaintiffs of their right of freedoms of expression and association guaranteed by the First Amendment of the United States Constitution, such deprivation being actionable under 42 U.S.C. § 1983,

and

Defendant FWEA acted in concert with the FWCS and its Board of School Trustees in establishing Article XXIII(G) and, in acting under color of state law by depriving the Plaintiffs of their right of

freedoms of expression and association guaranteed by the First Amendment of the United States Constitution, actionable under 42 U.S.C. § 1983

Apparently the state court bifurcated the questions of law "which could not be reached on the barren record." On March 14, 1986 Judge Ryan, Allen Circuit Court, conducted a hearing on the unresolved questions of law. During the colloquy Judge Ryan inquired about whether the defendants' counterclaims challenged merely the implementation of the clause and Mr. Hopkins, who represented defendants in that case and the plaintiffs in this case, responded:

But also the clause itself, Your Honor. We start out and there's negotiations for a provision, and we believe that the Board and the Union have an obligation to protect the rights under the constitution of federal and state of the non-member people.

(Page 21, lines 9–14, transcript of hearing before Judge Ryan on March 14, 1986), and:

But the question of whether the procedures involved were appropriate, were lawful, were constitutional, that's what this counterclaim is about.

(Page 41, lines 19–22, transcript of hearing before Judge Ryan on March 14, 1986). Judge Ryan remarked that he wanted to try and "save this verdict in a manner which comports to what [he] believe[d] to be more than lip service to the First Amendment and to the due process clause so that you don't make a career out of trying these lawsuits ..." (Page 41, lines 8–12)

The relief sought by the defendants counterclaim in state court was:

An injunction barring Plaintiff, now and in the future, from instituting judicial action to collect any service fee from Defendants which Plaintiff knows does not accurately reflect a nonmembers' pro-rata share of the costs of collective bargaining, contract administration and grievance handling; that Defendants be awarded costs for the defense of the original action and for the prosecution of this counterclaim; that Defendants be awarded attorneys' fees for the defense of this action and for the prosecution of this counterclaim, pursuant to, but not limited by, 42 U.S.C. § 1988; in the event that the Court determines that the Defendants, or any of them, are liable to the Plaintiff, determine the amount of such liability only after the Plaintiff has proved by clear and convincing evidence the amount it spends for collective bargaining, contract administration, and grievance adjustment; and, in any event, such liability cannot exceed that portion of membership dues which is retained by the Plaintiff; and that the Court award Defendants such other and further legal and equitable relief as is just.

The relief sought by the complaint in this case is to:

(1) declare Article XXIII(G) null and void, (2) enjoin the Defendants from attempting to enforce Article XXIII(G) in any manner, (3) award reasonable attorney fees to Plaintiffs.

Judge Ryan entered an Order on August 5, 1986 (Appendix A). It is unquestionably clear from Judge Ryan's Order that he considered the constitutional challenges to the contract clause permitting the FWEA to collect a fair share representation fee. Further, that Order, which corrected and entered the jury verdict was certified for interlocutory appeal under Indiana Rules of Appellate Procedure, Appellate Ruel 4(B)(6) on October 6, 1986 (Appendix B). This court was informed by the parties that that appeal is pending in the Court of Appeals of Indiana.

## II.

The question before the court is whether to abstain from exercising federal jurisdiction. The Supreme Court of the United States held in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), that "[a]bstention from exercise of federal jurisdiction is the exception not the rule." *Id.* at 813, 96 S.Ct. at 1244; *see*

*also, McClellan v. Carland,* 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910). There are four recognized categories of abstention. *Id.* Abstention is appropriate when a case involving a federal constitutional issue "might be mooted or presented in a different posture by a state court determination of pertinent state law" *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). Abstention is also appropriate where the issues presented are difficult questions of state law involving policy problems which transcend the issues in the case at bar. *See, Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Further, abstention is appropriate when the State is a party in the State court proceeding. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *accord, Collins v. County of Kendall, Illinois,* 807 F.2d 95 (7th Cir.1986); *W.C.M. Window Co. v. Bernardi,* 730 F.2d 486 (7th Cir.1984); *but compare, Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554 (7th Cir.1986). This case does not fall within any of those categories.

■ The Supreme Court in *Colorado River* held that there are " 'exceptional circumstances' which counsel against the 'unflagging obligation of the federal courts to exercise jurisdiction given them.' " *Lumen Constr., Inc. v. Brant Constr. Co., Inc.,* 780 F.2d 691, 694 (7th Cir.1985), quoting *Colorado River,* 424 U.S. at 811, 96 S.Ct. at 1246. The principles upon which abstention is founded are "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *accord, Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. In *Colorado River* the Court enumerated four factors to be utilized when analyzing a question of abstention. *Lumen Constr.,* 780 F.2d at 694. One of those factors was the court which "first [assumed] jurisdiction over property may exercise that jurisdiction to exclusion of other courts." *Colorado River,* 424 U.S. at 818, 96 S.Ct. 1246; *Donovan v. City of Dallas,* 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964); *Lumen Constr.,* 780 F.2d at 694. In this case neither court has exercised *in rem* jurisdiction over property. Therefore, that factor does not argue for or against abstention. Another factor to be considered is whether the federal forum is inconvenient. *Id.; cf., Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Lumen Constr.,* 780 F.2d at 694. The federal forum is not more or less convenient than the state forum in this case. Consequently, that factor does not argue for or against abstention. The next factor is whether it is desirable to avoid piecemeal litigation. *Id.; cf., Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942); *Lumen Constr.,* 780 F.2d at 694. To determine whether a stay will further an interest in avoiding piecemeal litigation the court does "not look for formal symmetry between the two actions but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal claims." *Lumen Constr.,* 780 F.2d at 695, *citing, Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 567, 103 S.Ct. 3201, 3213, 77 L.Ed.2d 837 (1983); *Board of Education of Valley View v. Bosworth,* 713 F.2d 1316, 1322 (7th Cir.1983). The comprehensive analysis of Judge Ryan's decision, and the pleadings filed in the Noble Circuit Court cases when viewed in the light of recent Indiana Supreme Court and Appellate decisions lead unmistakenly to the conclusion that there is a substantial likelihood that the state court litigation will dispose of all the claims presented in the federal claims.

The plaintiffs argue that the absence of the FWCS in the state case precludes the disposal of *all* claims presented by the federal claims. However if the state court finds the fair share representation fee

clause valid or invalid the federal claims against the FWCS will be moot. The clause itself shields the FWCS because collection of the fee is accomplished either by voluntary authorized payroll deduction or after a judgment determining the amount of the debt is entered. The state court litigation will resolve *all* claims. This factor argues in favor of abstention although not directly. The last factor enumerated in *Colorado River* was the order in which jurisdiction was obtained by the concurrent forums. *Id.; Pacific Live Stock v. Oregon Const.*, 241 U.S. 440, 447, 36 S.Ct. 637, 640, 60 L.Ed.2d 1084 (1916); *Lumen Constr. Inc. v. Brant*, 780 F.2d 691 at 694 (7th Cir.1985). In this case the state court acquired jurisdiction before the federal court. Specifically, in one instance, the state court had jurisdiction over two and one-half years before the federal case was filed. That factor also argues in favor of abstention.

Several cases subsequent to *Colorado River* have "identified at least four additional factors to be weighed in the balance." *Lumen Constr.*, 780 F.2d at 694. The court should look to the source of the governing law, state or federal. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 23–26, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983). In this case the governing law is derived from both state and federal jurisdictions. The fair share representation fees issues have been addressed by the Supreme Court of the United States. *See, Chicago Teachers Union, Local No. 1 v. Hudson*, —— U.S. ——, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986); *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). However, the collective bargaining agreement issues have been addressed by the Supreme Court of Indiana and Indiana Appellate courts. *See, Abels v. Monroe County Education Ass'n*, 489 N.E.2d 533 (Ind.App.Dist. 1 1986), *reh'g denied*, 490 N.E.2d 775 (Ind.1986); *New Prairie Classroom Teachers Ass'n v. Stewart*, 487 N.E.2d 1324 (Ind.App.Dist. 3 1986); *Fort Wayne Education Ass'n, Inc. v. Goetz*, 443 N.E.2d 364 (Ind.App.Dist. 4 1982). It is

clear that Judge Ryan analyzed the plaintiffs claims, including the constitutional challenge, utilizing the appropriate state and federal law. That factor does not tip the balance either way. Another factor analyzes the adequacy of the state court action to protect the federal plaintiff's rights. *Moses H. Cone Memorial Hospital*, 460 U.S. at 23–26, 103 S.Ct. at 941–942; *Lumen Constr.*, 780 F.2d 694. Careful scrutiny of the proceedings before Judge Ryan clearly demonstrates that the federal plaintiffs' rights were adequately protected by the state court action. Furthermore, the court may look to the relative progress of the state and federal proceedings. *Id.; Arizona*, 463 U.S. at 570, 103 S.Ct. at 3215; *Lumen Constr.*, 780 F.2d at 694. The state court has entered a jury verdict, which was returned one year before federal case was filed. Judge Ryan conducted an additional hearing and entered a written decision on the state court counterclaims. Further, the state court case is presently pending before the Indiana Appellate Court. The cases venued to the Noble Circuit Court were set for trial in December 1986. In contrast the federal case is still in the preliminary stage. Judge Posner's reasoning in *Mazanec v. North Judson-San Pierre School Corp.*, 763 F.2d 845 (7th Cir.1985), held that once a trial has been held a second trial would be a "complete waste of time" which "condemns the parties to delay and expense." *Id.* at 846. Although, in *Mazanec* it was the federal court abstaining after it had completed a trial, the clear logic applies directly to this case. A second trial in the federal court system would cause long delay and make the first trial a "complete waste of time". In *Mazanec* the delay argued against abstention, and in this case the same logic argues for abstention. *Id.* The final factor identified in *Lumen Constr.* was the "presence or absence of concurrent jurisdiction." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978); *Lumen Constr.*, 780 F.2d 694. "Congress realized that in enacting § 1983 it was altering the

balance of judicial power between the state and federal courts. But in doing so, Congress was adding to the jurisdiction of the federal courts, not subtracting from that of the state courts." *Allen v. McCurry,* 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980); *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961) (The federal remedy is supplementary to the state remedy ...). It is clear that concurrent jurisdiction over the plaintiffs' claims exists. In *Lumen Constr.* the court held that the presence of federal claims under section 1983 ... is an important factor to be weighed in the balance, but it does not pose an absolute bar. *Lumen Constr.,* 780 F.2d at 697, *See also, Holmes v. Chicago Transit Authority,* 505 F.Supp. 877, 879–80 (N.D.Ill.1981); *but compare, Tovar v. Billmeyer,* 609 F.2d 1291, 1293 (9th Cir.1980).

One other factor was recently enumerated by Judge Posner in *Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.,* 795 F.2d 1344 (7th Cir.1986). In that case the court held that

> [i]f the federal grounds were raised in the state court and explicitly or implicitly decided there, the attempt to use section 1983 suit to reexamine them in federal court might be blocked independently by the rule that the only federal court with appellate jurisdiction over state court judgments is the Supreme Court.

*Id.* at 1347, *citing* 28 U.S.C. § 1257; *Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554, 563 (7th Cir.1986). In that case an *ex parte* order was entered by a Wisconsin state court. The federal plaintiff challenged the state order under 42 U.S.C. § 1983 in federal court. In this case, the "federal grounds were raised in the state court and explicitly or implicitly decided there". *Del's,* 795 F.2d at 1347. The plaintiffs in essence here are requesting an appellate review of the jury verdict and Judge Ryan's decision. The appropriate appellate court currently has an appeal pending and the federal court should not attempt to prematurely consider issues which are not properly before the court.

The plaintiffs argue that this court should not abstain because the FWCS is not a party to the state court action. However, "[w]here the interests of the [parties] in each of the suits are congruent *Colorado River* abstention may be appropriate notwithstanding the nonidentity of the parties." *Lumen Constr.,* 708 F.2d at 695, *citing, Canady v. Koch,* 608 F.Supp. 1460, 1475 (S.D.N.Y.), *aff'd sub nom., Cannady v. Valentin,* 768 F.2d 501 (2d Cir.1985). Therefore, the mere absence of the FWCS from the state court proceedings does not argue against abstention in this case.

In this case, as in *Moses H. Cone Memorial Hospital* and *Lumen Construction,* the similarity between the state court claims and the federal claims clearly demonstrates that the "state-court litigation will be an adequate vehicle for the complete and prompt resolution between the parties." *Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. at 943; *accord, Lumen Constr.,* 780 F.2d at 695–96.

■ Accordingly, and for all the above reasons, it is the ORDER of the court that the defendant's Motion to Abstain is GRANTED. It is FURTHER ORDERED that this case be STAYED pending the completion of the state court proceedings. SO ORDERED.

### APPENDIX A

STATE OF INDIANA

COUNTY OF ALLEN

FORT WAYNE EDUCATION
ASSOCIATION, INC.,
Plaintiff,

vs.

MARY E. ALDRICH, ET AL,
Defendants.

IN THE ALLEN CIRCUIT COURT

CAUSE NUMBER: CC–83–1304

The Plaintiff is the local certificated, exclusive bargaining representative of public school teacher employees of the Fort Wayne Community School Board, a political

sub-division of the State of Indiana. The Defendants are also school teacher employees of the same Board.

The Plaintiff instituted separate suits to collect a fair share fee which it had charged to individual Defendants who object to the procedure for determining, charging and collecting it.

Trial to a non-advisory jury over nine (9) days resulted in favorable verdicts to Plaintiff but for sums which were less than those which Plaintiff charged and sought in its prayer to collect on issues framed in the Answers that, *inter alia*, the fees were in excess of costs and expenses authorized in the collective bargaining agreement and in law for contract adjustment, collective bargaining and grievance adjustment in the local bargaining unit.

The parties have presented various dispository motions throughout these proceedings which this court has denied, *inter alia*, for the reasons that genuine issues of fact existed with mixed questions of law which could not be reached on a barren record. The trial and verdicts have now made those questions of law ripe for decision. See, *Abood*, 431 U.S. 236, 97 S.Ct. 1800.

The Defendants counter-claimed in various legal theories which, when reduced to their essence, charge that the Plaintiff has failed to represent the Defendants, failed to protect their rights of free speech and association and employed a manner and means of determining the fee and of enforcing the fair share provision of the collective bargaining agreement that is oppressive.

The board of education has delegated to Plaintiff the manner by which the Plaintiff determines the composition of the fair share fee, charges the Defendants and enforces the claims for the fee so charged. The application of Article XXIII(G) impacts upon wages and working conditions and, in this regard, the discretionary authority of the board is delegated to the Plaintiff[1] to

manage an aspect of the employment relationship with nonmember-employees such as these Defendants. See, *Fort Wayne Education Association v. Goetz* (1982) 443 Ind.App. [N.E.2d] 364, 371.

Article XXIII(G) of the master contract obligates the Defendants

"... to pay to the Association (the Plaintiff) a representation fee, to be determined solely by the Association but in a manner consistent with the services rendered and costs incurred on behalf of all bargaining unit members. Such representation fee may then be allocated between the Association, the Indiana State Teachers Association, and the National Education Association, as the Association shall deem appropriate."

The National Education Association and Indiana State Teachers Association are associations of classroom teachers functioning at national and state levels to which Plaintiff claims affiliation and for which Plaintiff allocates a substantial portion of the exacted fee. Article XXIII(G) obligates the Defendants to pay fair value for services rendered by the Plaintiff and its affiliates National Education Association and Indiana State Teachers Association; and permits Plaintiff sole discretion to allocate any part of the fee charged of Defendants to each or both associations. In determining the fee to be charged, the portions which are paid to the Plaintiff's affiliates, the National Education Association and the Indiana State Teachers Association are based upon actual expenses although the rebate is estimated; whereas the portion attributed to Plaintiff is a budget estimate.

Article XXIII(G) expressly provides that the Defendants are obligated to pay "... fair value for services rendered ... and proportionate costs ... related to ... exclusive representation." A prospective determination of the fair share fee is not provided. The value of services *rendered* and costs *related* to exclusive representation may be neither anticipated nor projected but must be calculated after the services

---

1. The Court of Appeals in *Goetz*, [443 N.E.2d 364] at 373 held only that the Fort Wayne Board and the Association had the statutory power to negotiate Article XXIII(G).

are performed and costs have been incurred. Any method for determination and charging the fair share fee in advance is contrary to Article XXIII(G).

The record establishes that Plaintiff unilaterally formalized an internal rebate procedure; that payment of the representation fee is a condition precedent to triggering the procedure; that Defendants have no means or opportunity to resolve disputes concerning non-chargeable items of expense; that Defendant-teachers have refused to pay the fee because they dispute the procedures and the value judgments necessarily involved in determining the character of the representation fee and of the rebate; that the fee is charged prospectively and, on the basis of the expenditure experience of the previous year last past, and the estimated budget for the next ensuing year, the Plaintiff solely determines what items of expense should go toward the total representation fee to be presently charged; that adjustments which Plaintiff solely determines to be proper for whatever reason become a part of the consideration for rebate whenever the annual accounting and audit reports of the national, state and local units of the bargaining representative are made final; that the fee and the part thereof which is subject to rebate is in trust; that the master contract delegates to Plaintiff the sole discretion to choose any means which it deems appropriate to collect the entire fee, but does not provide relief to effectively review, challenge and resolve the sole determination of the Plaintiff; that the Plaintiff chose to pursue personal judgments against the Defendants, each of whom has answered and counter-claimed raising various legal and constitutional objections to payment.

The disparity between the Plaintiffs' demand, the evidence (Plaintiffs' Exhibit # 77: $215.89 for 1981–82; $235.62 for 1982–83) and the verdicts ($193.50 and

$211.50, respectively) permits the conclusion that the non-advisory jury found that some part of the charged fee, viz: $21.39 in 1981–82 and $24.12 in 1982–83 is a non-chargeable expense.[2]

The Defendants, although members of the bargaining unit, distinguish themselves as owning independent, legally cognizable interests and minority rights among the majority will. They set themselves apart from the social, political and ideological activities of the Plaintiff. Although the defendants may be beneficiaries of certain valuable services of their labor representative, they dispute the complexion of the representation fee. They object that the contract and the procedures of the Plaintiff to collect the fee afford neither express nor implied consideration for their legally cognizable rights: fair notice, opportunity to be heard, representation, freedom from coercive association and/or compulsory tribute to political, ideological, social and other non-germane activities of collective bargaining. The Defendants insist that the sole determination of the activities and expenses that may be unrelated and non-germane to contract administration, grievance adjustment and collective bargaining and the procedures therefore may not be so broadly delegated to the Plaintiff.[3]

The Defendants refuse membership in Plaintiff's association, and decline to financially support the exclusive bargaining representative, or to use part of their wages, to advance or loan tribute or otherwise associate themselves with claimed ideological and political interests of the Plaintiff—a protest which the First Amendment undeniably protects. *Abood,* at 431 U.S. 238, fn. 38, 97 S.Ct. 1801. As a right basically owned and granted under the Constitution, if infringed, Defendants are entitled to both legal and equitable redress. *Railway Clerks v. Allen* 373 U.S. 113, 83, S.Ct. 1158, 10 L.Ed.2d 235.

---

**2.** Plaintiff's Brief in Opposition to Defendants' Motion to Amend Counter-Claim, filed July 9, 1985, admits in paragraph (D) that its "list of chargeable expenses is not in accord" with decisions.

**3.** These issues were not presented in an evidentiary record in either *Goetz, supra* or *Abood v. Detroit Board of Education* (1977) 431 U.S. 228 [209] 236, 97 S.Ct. 1782 [1800, 52 L.Ed.2d 261].

The jury verdicts establish and presumptively validate Defendants' claims that they are entitled to 1st and 14th Amendment protections.

The use of exacted fees for expenses of legislative lobbying, like support of political candidates, forces conformity to philosophical and ideological causes and activities. Decisions affecting educational policy and goals belong to the General Assembly which may delegate its power to the school board. Activities designed to influence these policy decisions may not be financed at the expense of these particularly objecting employees of the school board. A similar conclusion is required for activities of contract administration and grievance adjustment outside the bargaining unit and those activities which are not reasonably related and are non-germane, non-ideological in their character to incidents of collective bargaining in the unit which Plaintiff serves.

The Defendants are not required either as individuals or as a class to initiate a proceeding to prove their claim, to trace their money, to identify the particular causes opposed, or to bear any burden of accounting, factually or monetarily. *Goetz, supra* at 373. *Abood, supra* at 431 U.S. 235–236, 97 S.Ct. 1799. The bargaining representative is obligated not only to carve out from the fee non-chargeable expenses, it may be obligated also to bear solely the expense of assuring that it has done so. See, e.g. *Abood*, at 432 [431] U.S. 221 [97 S.Ct. at 1792].

The union's procedure has forced a confrontation in a totally adversarial atmosphere of competing, albeit equal and legally cognizable interests[4] at enormous expense of interpersonal tranquility, educative pursuit, time and money which pales

the amount of the individual representation fees in controversy, or the amounts which could have been reasonably expected to result from a permissible internal rebate procedure and, which, in fact, did result from the verdicts.[5]

Nothing in this record may be said to reasonably advance the declared justification for exclusive bargaining agents; viz: promoting the cause of labor peace in the public sector. See, *Abood, supra,* at 431 U.S. 219; 97 S.Ct. 1791. The Plaintiff's procedure is patently insensitive to the Defendants' concerns.

Rather then salving inter-union rivalry, a fully festered intra-employee conflict is present—and perhaps, is antecedent to such a rivalry. Instead of fairly distributing the costs of exclusive representation, there is a distrust that charges are for self-serving ·and opposing political, ideological, social and other non-germane interests. Opposing camps within the collective bargaining unit within which the costs are to be fairly shared to promote common and desirable public goals of educating the children of this community are instead compelled to expend great resources to vindicate their opposing rights.

The *Goetz* Court, *supra* at 370, concluded that the fair share provisions of Article XXIII(G), like an agency shop provision in the private sector, as a condition of employment, is a working condition within the meaning of I.C. 20–7.5–1–5, and is a mandatory subject of discussion which may be bargained pursuant to the Certificated Educational Employee Bargaining Act. The collective-bargaining agreement has all the attributes of legislation for the subjects with which it deals and is like an enactment of State law. See, *Goetz* Parts 1 and 2, pp.

---

**4.** The Preamble to the collective bargaining agreement espouses a goal of quality education and pronounces that its achievement is "directly related to the quality and morale of all employees." In Article 1, Definitions, the teacher is granted "all rights, benefits, and privileges ..." of any member of the bargaining unit.

**5.** The evidence which Plaintiff offered establishes that the individual amount of the rebate,

which is solely the calculation of Plaintiff, is insubstantial compared to the total fees sought. "The amount at stake for each individual dissenter does not diminish this concern." *Chicago Teachers Union v. Hudson* 475 U.S. ——, 89 L.Ed.2d 232, 106 S.Ct. [1066]. The verdicts establish that greater sums are non-chargeable expense.

368–370, *supra; Abood,* 431 U.S. at 253, [97 S.Ct. 1782]. The discretion which the General Assembly delegated to school boards may not be abused and extended to the collective bargaining agreement and the procedures which are implemented to collect the fair share fee.

The services of the exclusive bargaining representative are said to be benefits inuring to all members of the bargaining unit whether or not they are also members of the union. Article 1, Definitions, Plaintiff's Exhibit # 1 (See f.n. 1, supra) *Goetz, supra,* at 368–369. Responsibility for exclusive representation is great and one which obliges it to "... fairly and equitably ... represent all employees ..., union and non-union, within the relevant unit." *Abood, supra,* at 431 U.S. 221, 97 S.Ct. 1792. This, it has not done in implementing the fair share provisions of Article XXIII(G).

Article XXIII(G) espouses fair sharing in the financial support of the exclusive bargaining representative in return for benefits fairly distributed within the relevant unit. In granting to the Association the sole determination of the value of services and properly chargeable items of expense, Article XXIII(G) excludes non-member employees from participating in the value judgments inherent in the process. Far from merely applying accepted accounting principles and procedures, the bargaining representative indulges in an unfettered, unilateral choice of not only what interests, rights and expenses representation will include, but also the adjustment of grievances as to those which are chosen. Mutuality of consideration is no less important between the member and non-members of the union than it is between the union and the employer at the bargaining table. If, in the course of their relationship, it becomes an economic burden to ferret out non-chargeable expenses or to share the costs of doing so and this obligation outweighs the expense of supporting competing political and ideological philosophies, accommodations may occur naturally in either the activities and philosophies advanced or in the voting place. Meanwhile, it is not unreasonable to place that burden upon the union. See, *Abood,* 431 U.S. 244, 264, S.Ct. 1804, 1914.

The non-member is suspended between the sharpened horns of a dilemma: The non-member who declines to participate in the activities of the bargaining representative is thus without representation at policy making levels affecting employment, wages, professional service and association, and although the union is legally obligated, in theory, to represent the non-member, the representation is incomplete, in practice, for the vindication of minority interests and of those legally cognizable disputes such as are here involved as between the minority non-members and the majority will of the members.

"That the Constitution does not require all public acts to be done in town meeting or an assembly of the whole," (Citation omitted) does not mean that a State or municipality may agree to set public policy on an unlimited range of issues in closed negotiations with "one category of interested individuals." (Citation omitted). Such a commitment by a governmental body to exclude minority view points from the counsels of government would violate directly the principle that 'government must afford all points of view an equal opportunity to be heard.' "

"It is possible that paramount governmental interests may be found—at least with respect to certain narrowly defined subjects of bargaining—that would support this restriction on First Amendment interests. But 'the burden is on the government to show the existence of such an interest.' "

\*      \*      \*      \*      \*      \*

"The same may be said of the asserted interests in eliminating the 'free rider' effect and in preserving labor peace. It may be that the Board of Education is in a position to demonstrate that these interests are of paramount importance requiring public employees to pay certain union fees and dues as a condition of employment is necessary to serve those interests under an exclusive bargaining

scheme. On the present record there is no assurance whatever that this is the case."

See, *Abood, supra*, at 431 U.S. 262, 97 S.Ct. 1813 (J. Powell, concurring).

"The Court's will not shrink from affording what remedies they may, with due regard for the legitimate interests of all parties; but it is appropriate to remind the parties of the availability of more practical alternatives to litigation for the vindication of the rights and accommodations of interests herein involved." ... *Goetz* at 374 (Citing *Abood*).

It has not been apparent to these parties that a remedy exists—short of suit.

Nothing in the master contract or in the rebate procedure provides the parties with "... more practical alternatives to litigation for the vindication of the rights and accommodations of interests here involved ...". *Ibid.* The definition of grievance in Article VIII: "... a difference *between the administration* representing the Board and the Association or one or more teachers . . ." does not embrace differences between the bargaining representative and its bargaining unit non-members over the representation fee. Although an unfair labor practice is judicially cognizable, the challenge is to avoid litigation—yet to obtain relief.

The discretionary grant in Article XXIII(G) from the Fort Wayne Board to Plaintiff to collect and to enforce the obligation does not afford either minimal fairness or the right of representation to which the Defendants are entitled. The availability of the adversarial and judicial process does not make this less so. Objecting employees have no more consideration than they possessed without the provision—a right which existed notwithstanding. The harm which requires redress pre-exists the discretionary step to the Courthouse to enforce Article XXIII(G) in the courts.

Given the verdicts, a portion of the exacted fee is for an impermissible use and the rebate procedure, even if it is pursued, exacts association from objecting non-members, albeit brief or temporary the exaction may be. *Ellis v. Brotherhood of Railway Clerks, et al* (1984) [466] U.S. [435], 104 S.Ct. [1883] 80 L.Ed.2d 439 [428].[6] A remedy is not appropriate if it exacts a "... compulsory subsidization of ideological activity by employees who object thereto ..." *Abood*, 431 U.S. 237. An escrow arrangement with a provision for interest is, at best, a compulsory investment at an involuntary rate of return. Defendants may not be required to carry any burden—however small. *Goetz* at 373; *Abood* at 97 S.Ct. 1799. A procedure which exacts a fee in advance and prior to rendering services and incurring costs is contrary to Article XXIII(G). A procedure which places First Amendment protections at risk and which can not be administered, policed or defended except at great expense and delay to those aggrieved is fundamentally insensitive.

The objecting non-member-Defendants lack the confidence in the unilaterally adopted rebate procedure of the Plaintiff. Concerns with fairness and representation in the allocation of services, expenses and in the proper use of fees persist. A case by case resolution remains unsatisfying with a result that is pregnant with justiciable issues for the next suit. An unfair labor practice may arise from a failure to fairly represent all within the bargaining unit under circumstances such as are found present in this record. See *Beck, supra.* A practice that encourages membership through any term or condition of employment is an unfair labor practice. *Goetz, supra* at 371, I.C. 20–7.5–1–7(a)(3). An impermissible use of the exacted fee and a compulsory subsidization and, like coercive membership, may be cognizable both judicially and administratively pursuant to I.C.

6. This case is not distinct from other compulsory exaction cases; i.e. *Abood* and *Ellis, supra.* See also, *Hudson v. Chicago Teachers Union Local No. 1.* (7th Cir.1984) 743 F.2d 1187, 1191 cert. granted 475 U.S. ——, 89 L.Ed.2d 232, 106 S.Ct. 1066 [cert. granted, 472 U.S. 1007, 105 S.Ct. 2700, 86 L.Ed.2d 716, affd., —— U.S. ——, 106 S.Ct. 1066, 89 L.Ed.2d 232], *Beck v. Communications Workers of America,* (4th Cir.1985) 776 F.2d 1187.

20–7.5–1–9(e). That Board is charged with the responsibility of resolving and remedying specific disputes such as are here raised and in supervising the policy declarations of the General Assembly which the Goetz court found included the authority to negotiate this fair share provision in collective bargaining agreements. It is reasonably expected that staff and personnel may be provided to perform its statutory tasks.

## ORDER OF RELIEF AND INJUNCTION

An injunction and judgment on the counter-claim is ordered for Defendants against Plaintiff with costs and more particularly in a manner not inconsistent with the Finding of Facts and Conclusions of Law made herein and in the following particulars, viz:

1. Plaintiff is enjoined from collecting and instituting suit to collect from Defendants any part of the representation fee which exceeds the proportionate part of the fair value of services rendered on their behalf by the Plaintiff, the Indiana State Teachers Association (ISTA) and the National Education Association (NEA) and which constitutes the costs so incurred as incidental activities of collective bargaining, contract administration, grievance adjustment and other expenses which are not reasonably related and germane to said activities within the bargaining unit.

2. Plaintiff shall forthwith cease and desist all activities in the nature of the rebate procedure adopted pursuant to Article XXIII(G) of the Collective Bargaining Agreement with the Fort Wayne Board of Education identified as Plaintiff's Exhibit No. 1.

3. The Parties shall each submit a formalized procedure to implement the provisions of Article XXIII(G), and I.C. 20.7.5–1–9 and this order within sixty (60) days.

4. Pursuant to Article XXIII(G), the Plaintiff may not charge and the non-member is not obligated to pay a fee for services not rendered and costs not incurred; and not until Plaintiff satisfies its duty which *Abood* imposes (at U.S. 235–236, S.Ct.

1799), to carry the burden of accounting and proof of claim. This duty includes: first, identifying, with particularity, the services for and costs of causes and activities advanced; second, demonstrating their nexus to the fee charged; and, third, providing reasonable notice and opportunity to be heard regarding the complexion of the services and costs comprising the fair share fee. The duty of representation of non-members requires the union to heed the voice of the non-members in the determination and charging of the exacted fees.

5. Specific claims regarding germaneness of a given service and cost of an activity of contract administration, grievance adjustment and collective bargaining shall be promptly and duly submitted to the Indiana to I.C. 20–7.5–1 et seq., and especially, Section 9, thereof. Education Employment Relations Board pursuant to I.C. 20–7.5–1 et seq. and especially, Section 9, thereof which shall promptly act to resolve the dispute and in a manner consistent with its authorized procedures and with law.

6. Ruling upon the motions of Defendants for attorney's fees and the objections of Plaintiff are, pursuant to Plaintiff's request therein, reserved pending further hearing.

7. Pursuant to the Memorandum Order upon Pending Motions, Objections and Counterclaims of February 12, 1986, the verdict of the jury is now ordered corrected and entered in the following words and figures setforth in Appendix A hereto which is incorporated as though fully setforth herein.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED this 5th day of August, 1986.

/s/ Thomas L. Ryan
Thomas L. Ryan
Judge, Allen Circuit Court

APPENDIX A TO THE COURT'S ORDER OF RELIEF AND INJUNCTION PARAGRAPH NUMBER 7, DATED AUGUST 5, 1986

## JUDGMENT

The Jury having found in favor of the Plaintiff and against the Defendants, and counsel for Plaintiff and counsel for Defendants having agreed to certain setoffs, judgment is now entered against the Defendants listed below, employed less than full time by the Fort Wayne Community Schools for school years 1981–82, or 1982–83, or both, for a fair share representation fee payable to Plaintiff, the Fort Wayne Education Association, Inc., in the amounts set forth below.

| | TEACHER'S NAME | 1981–82 | 1982–83 | TOTAL |
|---|---|---|---|---|
| 1. | BARBARA A. BABBITT | $ 96.75 | $105.75 | $202.50 |
| 2. | ANN S. BORNE | $ 0 | 123.35 | 123.35 |
| 3. | ANGELA CASSO–HAINES | $ 96.75 | 0 | 96.75 |
| 4. | CHRISTINE DANLEY | $ 0 | 105.75 | 105.75 |
| 5. | MADELINE M. GARVIN | $ 96.75 | 0 | 96.75 |
| 6. | GUSSIE GREEN | $ 0 | 105.75 | 105.75 |
| 7. | JANE E. GROSE | $ 0 | 105.75 | 105.75 |
| 8. | DEBORAH A. HELMKE | $ 96.75 | 105.75 | 202.50 |
| 9. | JUDITH D. MILDWORM | $ 57.60 | 105.75 | 163.35 |
| 10. | RUTH I. RHINEHART | $ 0 | 105.75 | 105.75 |
| 11. | MONYA J. WEISSART | $ 96.75 | 0 | 96.75 |

DATED: August 5, 1986          /s/          Thomas L. Ryan

Judge,          Allen Circuit Court

## JUDGMENT

The Jury having found in favor of the Plaintiff and against the Defendants and counsel for Plaintiff and counsel for Defendants having agreed to certain setoffs, judgment is now entered against the Defendants listed below, employed full time by the Fort Wayne Community Schools for school years 1981–82, or 1982–83, or both for a fair share representation fee payable to Plaintiff, the Fort Wayne Education Association, Inc., in the amounts set forth below.

| | TEACHER'S NAME | 1981–82 | 1982–83 | TOTAL |
|---|---|---|---|---|
| 1. | MARY E. ALDRICH | $ 0 | $162.10 | $162.10 |
| 2. | GERALD L. ANDERSON | 193.50 | 211.50 | 405.00 |
| 3. | RALPH J. ANDERSON | 0 | 162.10 | 162.10 |
| 4. | CAROL F. AYRES | 0 | 211.50 | 211.50 |
| 5. | MARITA A. BAKER | 148.00 | 211.50 | 359.50 |
| 6. | JACOB G. BAKER | 125.40 | 211.50 | 336.90 |
| 7. | SUSAN K. BANDEMER | 0 | 211.50 | 211.50 |
| 8. | ROSELLA BARTKIEWICZ | 193.50 | 211.50 | 405.00 |
| 9. | WALTER BARTKIEWICZ | 193.50 | 211.50 | 405.00 |
| 10. | CHARMAINE BAUER | 0 | 211.50 | 211.50 |
| 11. | ERIC D. BEEBE | 193.50 | 211.50 | 405.00 |
| 12. | SUSAN E. BEERMAN | 193.50 | 211.50 | 405.00 |
| 13. | THOMAS S. BEERMAN | 193.50 | 211.50 | 405.00 |
| 14. | DAVID BIERBAUM | 193.50 | 211.50 | 405.00 |
| 15. | JOHN BIERBAUM | 193.50 | 211.50 | 405.00 |
| 16. | JON M. BILL | 193.50 | 211.50 | 405.00 |
| 17. | WILLIAM L. BLOSSER | 193.50 | 211.50 | 405.00 |
| 18. | SUSAN B. BOESCH | 193.50 | 211.50 | 405.00 |
| 19. | ERNEST J. BOJRAB | 125.40 | 211.50 | 336.90 |
| 20. | MARTHA E. BOLYARD | 193.50 | 211.50 | 405.00 |
| 21. | STEPHANY BOURNE | 125.40 | 211.50 | 336.90 |
| 22. | CHERRYLL B. BOWMAN | 193.50 | 211.50 | 405.00 |
| 23. | MARK E. BOYNTON | 193.50 | 211.50 | 405.00 |
| 24. | FELIX T. BRAUN | 193.50 | 211.50 | 405.00 |
| 25. | SHARON A. BROMMER | 193.50 | 211.50 | 405.00 |

| TEACHER'S NAME | 1981–82 | 1982–83 | TOTAL |
|---|---|---|---|
| 26. ANITA L. BROWN | 193.50 | 211.50 | 405.00 |
| 27. JOSEPH F. BROWN | 0 | 211.50 | 211.50 |
| 28. ANN M. BRUDNEY | 193.50 | 211.50 | 405.00 |
| 29. CAROL S. BRUICK | 193.50 | 211.50 | 405.00 |
| 30. STEVEN R. BURNS | 102.70 | 211.50 | 314.20 |
| 31. RICHARD BULLERMAN | 193.50 | 211.50 | 405.00 |
| 32. ROBERT BULTEMEIER | 193.50 | 211.50 | 405.00 |
| 33. SALLY BURTZNER | 193.50 | 211.50 | 405.00 |
| 34. BOBBIE A. CARUTHERS | 193.50 | 211.50 | 405.00 |
| 35. ANGELA CASSO–HAINES | 0 | 211.50 | 211.50 |
| 36. JOHN C. CHURCHWARD | 193.50 | 211.50 | 405.00 |
| 37. ROBERT T. CLARK | 193.50 | 211.50 | 405.00 |
| 38. WILMA L. COLEMAN | 0 | 186.80 | 186.80 |
| 39. DIANE G. COOK | 193.50 | 211.50 | 405.00 |
| 40. WALTER COOK | 193.50 | 211.50 | 405.00 |
| 41. KENNETH CRAGUE (NEA Life Member) | 0 | 167.86 | 167.86 |
| 42. GARY A. CRAWFORD | 193.50 | 211.50 | 405.00 |
| 43. DOROTHY M. COPLEN | 0 | 211.50 | 211.50 |
| 44. WILLIAM D. CRITELL | 193.50 | 211.50 | 405.00 |
| 45. MARY J. CRUM | 193.50 | 211.50 | 405.00 |
| 46. THEODORE CRUM | 193.50 | 211.50 | 405.00 |
| 47. DAVID G. CSEREP | 193.50 | 211.50 | 405.00 |
| 48. ROSETTA W. CURRY | 0 | 211.50 | 211.50 |
| 49. LAURA G. DALEY | 193.50 | 0 | 193.50 |
| 50. CHRISTINE DANLEY | 193.50 | 0 | 193.50 |
| 51. MICHAEL DANLEY | 193.50 | 211.50 | 405.00 |
| 52. NORMA DAVIES | 193.50 | 211.50 | 405.00 |
| 53. CHARLENE J. DAVIS | 0 | 211.50 | 211.50 |
| 54. GEORGE R. DAVIS | 193.50 | 211.50 | 405.00 |
| 55. PEGGY (TELLMAN) DAVIS | 193.50 | 211.50 | 405.00 |
| 56. RICHARD L. DAVIS | 193.50 | 211.50 | 405.00 |
| 57. ROBERT DAVIS | 58.80 | 211.50 | 270.30 |
| 58. SCOTT W. DAVIS | 0 | 211.50 | 211.50 |
| 59. JANET K. DENNY | 0 | 162.10 | 162.10 |
| 60. DAN A. DICKEY | 193.50 | 211.50 | 405.00 |
| 61. SHARON L. DIETRICK | 193.50 | 211.50 | 405.00 |
| 62. CLYDE A. DIVELY | 193.50 | 211.50 | 405.00 |
| 63. BYRON A. DOERFLER | 193.50 | 211.50 | 405.00 |
| 64. DALE D. DOERFFLER | 193.50 | 211.50 | 405.00 |
| 65. JO A. DOMMER | 0 | 190.30 | 190.30 |
| 66. WALTER R. DONLAN | 0 | 211.50 | 211.50 |
| 67. VERA L. DREW | 193.50 | 211.50 | 405.00 |
| 68. CONSTANCE A. DRURY | 193.50 | 211.50 | 405.00 |
| 69. JERRY A. DURST | 193.50 | 211.50 | 405.00 |
| 70. MARY A. DYER | 193.50 | 211.50 | 405.00 |
| 71. DORIS R. DYKHUIZEN | 193.50 | 211.50 | 405.00 |
| 72. JOHN P. EASTES | 193.50 | 211.50 | 405.00 |
| 73. FRANKLIN J. EBETINO | 193.50 | 211.50 | 405.00 |
| 74. NELSON EDDY | 193.50 | 211.50 | 405.00 |
| 75. JEAN T. EHRMAN | 193.50 | 211.50 | 405.00 |
| 76. DEBORAH EMENHISER | 193.50 | 211.50 | 405.00 |
| 77. JAMES E. EMMERSON | 193.50 | 211.50 | 405.00 |
| 78. ALONZO B. EPPS | 193.50 | 211.50 | 405.00 |
| 79. MARTIN R. ERICKSON | 125.40 | 211.50 | 336.90 |
| 80. RICHARD S. EVANS | 193.50 | 211.50 | 405.00 |
| 81. LAWRENCE B. EWING | 193.50 | 211.50 | 405.00 |
| 82. ROSALIE M. FARRELL | 170.80 | 211.50 | 382.30 |

| | TEACHER'S NAME | 1981-82 | 1982-83 | TOTAL |
|---|---|---|---|---|
| 83. | RONALD L. FECHER | 193.50 | 211.50 | 405.00 |
| 84. | MARYANN FELGER | 193.50 | 211.50 | 405.00 |
| 85. | CAROL J. FINCO | 0 | 211.50 | 211.50 |
| 86. | KEITH C. FISHER | 193.50 | 211.50 | 405.00 |
| 87. | CAROLYN R. FLECK | 193.50 | 211.50 | 405.00 |
| 88. | RONALD FLICKINGER | 0 | 211.50 | 211.50 |
| 89. | STEPHEN M. FLOHR | 125.40 | 211.50 | 336.90 |
| 90. | TERRY R. FLYNN | 193.50 | 211.50 | 405.00 |
| 91. | JACQUELINE FOELBER | 193.50 | 211.50 | 405.00 |
| 92. | JUNE I. FOLAND | 193.50 | 211.50 | 405.00 |
| 93. | CHERYL A. FOLEY | 193.50 | 211.50 | 405.00 |
| 94. | JANET K. FORD | 0 | 211.50 | 211.50 |
| 95. | CAROL A. FRECK | 125.40 | 211.50 | 336.90 |
| 96. | GREGORY FRISINGER | 193.50 | 211.50 | 405.00 |
| 97. | JOHN A. FYFE | 0 | 211.50 | 211.50 |
| 98. | SHIRLEY W. GALVIN | 193.50 | 211.50 | 405.00 |
| 99. | NANCY L. GARRINGER | 193.50 | 211.50 | 405.00 |
| 100. | MADELINE M. GARVIN | 0 | 211.50 | 211.50 |
| 101. | LINDA E. GERARDOT | 193.50 | 211.50 | 405.00 |
| 102. | SHERRYLENE GERBER | 193.50 | 211.50 | 405.00 |
| 103. | DANIEL J. GIBSON | 193.50 | 211.50 | 405.00 |
| 104. | STEVEN A. GILPIN | 193.50 | 211.50 | 405.00 |
| 105. | SUZANNE M. GINTY | 193.50 | 211.50 | 405.00 |
| 106. | JESSICA GLENDENING | 0 | 211.50 | 211.50 |
| 107. | HENRIETTA M. GOETZ | 193.50 | 211.50 | 405.00 |
| 108. | ANN GOLM | 193.50 | 211.50 | 405.00 |
| 109. | DALE E. GOON | 193.50 | 211.50 | 405.00 |
| 110. | JOAN K. GOTSCHALL | 193.50 | 211.50 | 405.00 |
| 111. | JOEL A. GRANDSTAFF | 193.50 | 211.50 | 405.00 |
| 112. | GUSSIE GREEN | 193.50 | 0 | 193.50 |
| 113. | IRENE K. HAAK | 0 | 176.50 | 176.50 |
| 114. | PATRICIA L. HAEFLING | 193.50 | 211.50 | 405.00 |
| 115. | M. JANE HAFLICH | 193.50 | 211.50 | 405.00 |
| 116. | IRVIN M. HART, JR. | 125.40 | 211.50 | 336.90 |
| 117. | MARILYN J. HART | 193.50 | 211.50 | 405.00 |
| 118. | RUTH E. HART | 193.50 | 211.50 | 405.00 |
| 119. | ALFRED L. HEMMER | 193.50 | 211.50 | 405.00 |
| 120. | MARTHA W. HEMMER | 193.50 | 211.50 | 405.00 |
| 121. | JOHN R. HILL | 193.50 | 211.50 | 405.00 |
| 122. | MARGARET A. HOBSON | 193.50 | 211.50 | 405.00 |
| 123. | JULIA HOLLINGSWORTH | 0 | 186.80 | 186.80 |
| 124. | RICHARD E. HOUSEL | 193.50 | 211.50 | 405.00 |
| 125. | DONALD D. HUNTER | 193.50 | 211.50 | 405.00 |
| 126. | MICHAEL IANUCILLI | 193.50 | 211.50 | 405.00 |
| 127. | PAMELA IANUCILLI | 193.50 | 211.50 | 405.00 |
| 128. | CALERA A. IRVIN | 193.50 | 211.50 | 405.00 |
| 129. | ANITA S. ISCH | 193.50 | 211.50 | 405.00 |
| 130. | M. PATRICIA JACKSON | 193.50 | 211.50 | 405.00 |
| 131. | ALBERT JACQUAY, II | 193.50 | 211.50 | 405.00 |
| 132. | CHERYL L. JOHNSON | 193.50 | 211.50 | 405.00 |
| 133. | ROBERT R. JOHNSON | 193.50 | 211.50 | 405.00 |
| 134. | CATHLEEN KARLSON | 193.50 | 211.50 | 405.00 |
| 135. | MARCILE L. KECK | 193.50 | 211.50 | 405.00 |
| 136. | JAMES W. KEIM (NEA Life Member) | 0 | 167.86 | 167.86 |
| 137. | J. MICHAEL KELLEY | 193.50 | 211.50 | 405.00 |
| 138. | ROBERT KETTERMAN | 193.50 | 211.50 | 405.00 |
| 139. | JANE K. KIMMEL | 193.50 | 211.50 | 405.00 |

| | TEACHER'S NAME | 1981–82 | 1982–83 | TOTAL |
|---|---|---|---|---|
| 140. | CAROLE A. KLAEHN | 0 | 186.80 | 186.80 |
| 141. | JERRY P. KLAUSING | 193.50 | 211.50 | 405.00 |
| 142. | ROY A. KLINE | 0 | 211.50 | 211.50 |
| 143. | THOMAS E. LAKE | 193.50 | 211.50 | 405.00 |
| 144. | JAMES W. LAMBERT | 193.50 | 211.50 | 405.00 |
| 145. | ROBERT B. LAMBERT | 193.50 | 211.50 | 405.00 |
| 146. | DOUGLAS M. LASLIE | 102.70 | 211.50 | 314.20 |
| 147. | NANCY S. LASLIE | 193.50 | 211.50 | 405.00 |
| 148. | KAY J. LEININGER | 193.50 | 211.50 | 405.00 |
| 149. | VIRGINIA LEONARD | 0 | 211.50 | 211.50 |
| 150. | CARTER W. LOHR | 193.50 | 211.50 | 405.00 |
| 151. | JAMES LUBBEHUSEN | 0 | 211.50 | 211.50 |
| 152. | BRETT D. LUCAS | 193.50 | 211.50 | 405.00 |
| 153. | SANDRA A. MACY | 193.50 | 211.50 | 405.00 |
| 154. | SALLY L. MADDEN | 193.50 | 211.50 | 405.00 |
| 155. | THOMAS E. MADDEN | 193.50 | 211.50 | 405.00 |
| 156. | WILLIAM B. MADDEN | 193.50 | 211.50 | 405.00 |
| 157. | RICHARD MANGANIELLO | 193.50 | 211.50 | 405.00 |
| 158. | LOIS E. MANNIX (NEA Life Member) | 154.28 | 167.86 | 322.14 |
| 159. | GERALDINE MANSBACH | 0 | 211.50 | 211.50 |
| 160. | STEWART A. MARSH | 193.50 | 211.50 | 405.00 |
| 161. | DIANA M. MARTIN | 193.50 | 211.50 | 405.00 |
| 162. | LARRY MARTIN | 0 | 211.50 | 211.50 |
| 163. | NORMA F. MARTIN | 193.50 | 211.50 | 405.00 |
| 164. | CLARE M. MASON | 0 | 188.80 | 188.80 |
| 165. | CAROL A. MASTERS | 193.50 | 211.50 | 405.00 |
| 166. | JOHN T. McCORY (NEA Life Member) | 86.18 | 167.86 | 254.04 |
| 167. | LAURA J. McCOY | 193.50 | 211.50 | 405.00 |
| 168. | JANICE L. McDANNELL | 193.50 | 211.50 | 405.00 |
| 169. | JOAN M. McKEE | 125.40 | 211.50 | 336.90 |
| 170. | BRENDA L. McLAIN | 193.50 | 211.50 | 405.00 |
| 171. | MICHAEL M. McMILLEN | 193.50 | 211.50 | 405.00 |
| 172. | LAURA MEGLES–BIESIADA | 193.50 | 211.50 | 405.00 |
| 173. | RICHARD L. MELTON | 193.50 | 211.50 | 405.00 |
| 174. | SHARON MILHOLLAND | 193.50 | 211.50 | 405.00 |
| 175. | DONALD G. MILLER | 193.50 | 211.50 | 405.00 |
| 176. | SUSAN L. MILLS | 193.50 | 211.50 | 405.00 |
| 177. | CLIFFORD M. MINIER | 193.50 | 211.50 | 405.00 |
| 178. | MAURICE J. MISHLER | 0 | 211.50 | 211.50 |
| 179. | CARRIE V. MODEN | 193.50 | 211.50 | 405.00 |
| 180. | LOWELL E. MOENNIG | 193.50 | 211.50 | 405.00 |
| 181. | MICHAEL J. MORRIS | 193.50 | 211.50 | 405.00 |
| 182. | CLARYN M. MYERS | 193.50 | 211.50 | 405.00 |
| 183. | CYNTHIA E. MYERS | 193.50 | 211.50 | 405.00 |
| 184. | CHRISTINE A. NAGEL | 193.50 | 211.50 | 405.00 |
| 185. | JANE W. NEEDHAM | 193.50 | 211.50 | 405.00 |
| 186. | KATHLEEN NEUHAUS | 193.50 | 211.50 | 405.00 |
| 187. | DONN J. NICHOLS, III | 193.50 | 211.50 | 405.00 |
| 188. | MARY E. NOLD | 193.50 | 211.50 | 405.00 |
| 189. | CHRISTIAN NORDLIN | 193.50 | 211.50 | 405.00 |
| 190. | CLIFFORD W. O'BRIEN (NEA Life Member) | 0 | 167.86 | 167.86 |
| 191. | LESLIE W. ODIER | 193.50 | 211.50 | 405.00 |
| 192. | SUSAN K. ODIER | 193.50 | 211.50 | 405.00 |
| 193. | BRUCE I. OLIVER | 193.50 | 211.50 | 405.00 |
| 194. | KATHLEEN A. OPIHORY | 193.50 | 211.50 | 405.00 |
| 195. | KENNETH P. ORMEROD | 193.50 | 211.50 | 405.00 |
| 196. | VICKI S. OTTOSON | 148.00 | 211.50 | 359.50 |

| | TEACHER'S NAME | 1981–82 | 1982–83 | TOTAL |
|---|---|---|---|---|
| 197. | JO ANN OVERMYER | 193.50 | 211.50 | 405.00 |
| 198. | THOMAS J. PABST | 193.50 | 211.50 | 405.00 |
| 199. | CALVIN E. PAGE | 193.50 | 211.50 | 405.00 |
| 200. | NANCY L. PASSWATER | 193.50 | 211.50 | 405.00 |
| 201. | JAMES R. PEPPLE | 193.50 | 211.50 | 405.00 |
| 202. | JEAN E. PEREGO | 193.50 | 211.50 | 405.00 |
| 203. | KENNETH R. PERKINS | 193.50 | 211.50 | 405.00 |
| 204. | ALLEN L. PETERS | 0 | 186.60 | 186.60 |
| 205. | ELAINE R. PETERSEN | 0 | 186.60 | 186.60 |
| 206. | VICKI W. PETRIE | 125.40 | 211.50 | 336.90 |
| 207. | ROBIN G. PHILLIPS | 193.50 | 211.50 | 405.00 |
| 208. | SARAH J. PHILLIPS | 193.50 | 211.50 | 405.00 |
| 209. | RICHARD W. PIATT | 193.50 | 211.50 | 405.00 |
| 210. | GENE P. PORTER | 0 | 211.50 | 211.50 |
| 211. | GREGORY A PRESSLEY | 193.50 | 211.50 | 405.00 |
| 212. | JODEE L. PRESSLEY | 193.50 | 0 | 193.50 |
| 213. | WILLIAM P. RAGLE | 193.56 | 211.50 | 405.00 |
| 214. | LEEANN REED | 148.10 | 211.50 | 359.60 |
| 215. | VICTORIA S. REED | 0 | 186.80 | 186.80 |
| 216. | BEVERLY J. RENBARGER | 193.50 | 211.50 | 405.00 |
| 217. | DON I. RESLER | 193.50 | 211.50 | 405.00 |
| 218. | DONALD REYNOLDS | 102.70 | 211.50 | 314.20 |
| 219. | SHARON M. REYNOLDS | 193.50 | 211.50 | 405.00 |
| 220. | BERNARD RICHARDVILLE | 193.50 | 211.50 | 405.00 |
| 221. | CATHERINE B. ROHRS | 0 | 211.50 | 211.50 |
| 222. | BEVERLY J. ROLLINS | 193.50 | 211.50 | 405.00 |
| 223. | JENNIE E. ROTH | 0 | 211.50 | 211.50 |
| 224. | LARRY W. ROTH | 0 | 211.50 | 211.50 |
| 225. | JAMES K. ROZELLE | 193.50 | 211.50 | 405.00 |
| 226. | THOMAS E. RUSSELL | 193.50 | 211.50 | 405.00 |
| 227. | TERRY E. RUTAN | 193.50 | 211.50 | 405.00 |
| 228. | MARY J. SAMUEL | 193.50 | 211.50 | 405.00 |
| 229. | MICHAEL R. SANDERS | 0 | 188.80 | 188.80 |
| 230. | DONNA J. SATTERTHWAITE | 0 | 186.80 | 186.80 |
| 231. | MICHAEL SATTERTHWAITE | 80.00 | 211.50 | 291.50 |
| 232. | JOHN F. SAWYER | 193.50 | 211.50 | 405.00 |
| 233. | DONALD D. SCHAFFER | 193.50 | 211.50 | 405.00 |
| 234. | GREGORY SCHAMERLOH | 0 | 211.50 | 211.50 |
| 235. | LARRY R. SHELTON | 0 | 211.50 | 211.50 |
| 236. | KEITH SCHINBECKLER | 193.50 | 211.50 | 405.00 |
| 237. | ORVILLE SCHLATTER | 193.50 | 211.50 | 405.00 |
| 238. | BERNARD SCHNELLBACH | 193.50 | 211.50 | 405.00 |
| 239. | RAYMOND J. SCHOTT | 0 | 211.50 | 211.50 |
| 240. | THOMAS C. SCHUCKEL | 193.50 | 211.50 | 405.00 |
| 241. | ARTHUR E. SCHWAB | 139.80 | 211.50 | 351.30 |
| 242. | MARY S. SIMLER | 193.50 | 211.50 | 405.00 |
| 243. | ELIZABETH SIMMONS | 193.50 | 0 | 193.50 |
| 244. | STEPHEN P. SIMMONS | 193.50 | 211.50 | 405.00 |
| 245. | EDITH L. SMITH | 193.50 | 211.50 | 405.00 |
| 246. | MARJORIE K. SMITH | 193.50 | 211.50 | 405.00 |
| 247. | RICKY G. SMITH | 0 | 211.50 | 211.50 |
| 248. | SCOTT SOUERS | 193.50 | 211.50 | 405.00 |
| 249. | TERRYL G. SPRINGER | 125.40 | 211.50 | 336.90 |
| 250. | VIDA E. STAIR | 0 | 211.50 | 211.50 |
| 251. | GLEN D. STEBING | 193.50 | 211.50 | 405.00 |
| 252. | PEGGY L. STEPHENS | 193.50 | 211.50 | 405.00 |
| 253. | NORMA C. STERLING | 193.50 | 211.50 | 405.00 |
| 254. | ROBERT N. STOREY | 193.50 | 211.50 | 405.00 |

| TEACHER'S NAME | 1981–82 | 1982–83 | TOTAL |
|---|---|---|---|
| 255. DAVID L. STREETER | 0 | 211.50 | 211.50 |
| 256. ELAINE STUCKEY | 193.50 | 211.50 | 405.00 |
| 257. JUDITH A. SUMMERS | 193.50 | 211.50 | 405.00 |
| 258. SANDRA SUNDERLAND | 193.50 | 211.50 | 405.00 |
| 259. EVELYN M. SURSO | 193.50 | 211.50 | 405.00 |
| 260. CHRISTOPHER SVARCZKOPF | 193.50 | 211.50 | 405.00 |
| 261. ROBERT TALIAFERRO | 193.50 | 211.50 | 405.00 |
| 262. CHARLES W. TAYLOR | 193.50 | 211.50 | 405.00 |
| 263. ROBERT L. TAYLOR | 193.50 | 211.50 | 405.00 |
| 264. PAMELA K. THOMAS | 193.50 | 211.50 | 405.00 |
| 265. MADELEINE THOMPSON | 193.50 | 211.50 | 405.00 |
| 266. MAX A. THRASHER | 125.40 | 211.50 | 336.90 |
| 267. JOHN M. TIPPLE | 193.50 | 211.50 | 405.00 |
| 268. JENNIFER S. TITZER | 193.50 | 211.50 | 405.00 |
| 269. THOMAS L. TOM | 0 | 162.10 | 162.10 |
| 270. ROBERT W. TRAMMEL | 0 | 211.50 | 211.50 |
| 271. RITA A. TURFLINGER | 193.50 | 211.50 | 405.00 |
| 272. DANIEL A. VOUGHT | 193.50 | 211.50 | 405.00 |
| 273. JAMES S. WAGNER | 193.50 | 211.50 | 405.00 |
| 274. CONNIE J. WALBURN | 193.50 | 211.50 | 405.00 |
| 275. SHIRLEY A. WALDA | 193.50 | 211.50 | 405.00 |
| 276. WILLIAM M. WALKER | 193.50 | 211.50 | 405.00 |
| 277. JOHN R. WALTER | 0 | 211.50 | 211.50 |
| 278. LINDA A. WATSON | 193.50 | 211.50 | 405.00 |
| 279. SONDRA J. WATTLEY | 193.50 | 211.50 | 405.00 |
| 280. JANET M. WEBER | 193.50 | 211.50 | 405.00 |
| 281. ROBERT C. WEBER | 193.50 | 211.50 | 405.00 |
| 282. BEVERLY WEHRENBERG | 193.50 | 211.50 | 405.00 |
| 283. H. EARL WEINERT | 193.50 | 211.50 | 405.00 |
| 284. MONYA J. WEISSERT | 0 | 211.50 | 211.50 |
| 285. CHERYL L. WHITE | 193.50 | 211.50 | 405.00 |
| 286. EDWIN H. WHITE, JR. | 193.50 | 211.50 | 405.00 |
| 287. WANDA L. WHITE | 0 | 211.50 | 211.50 |
| 288. MARGARET WHONSETLER | 193.50 | 211.50 | 405.00 |
| 289. ROBERTA H. WIDMANN | 193.50 | 211.50 | 405.00 |
| 290. SALLY K. WIDMANN | 113.10 | 211.50 | 324.60 |
| 291. DANIEL R. WILSON | 193.50 | 211.50 | 405.00 |
| 292. SUSAN WINEBRENNER | 193.50 | 211.50 | 405.00 |
| 293. DAN F. WIRE | 193.50 | 211.50 | 405.00 |
| 294. NATHANIEL WITTENBERG | 193.50 | 211.50 | 405.00 |
| 295. JAMES D. YODER | 193.50 | 211.50 | 405.00 |
| 296. MARILYN J. YODER | 193.50 | 211.50 | 405.00 |
| 297. JANET S. YOUNG | 0 | 211.50 | 211.50 |
| 298. JEROME M. ZENT | 0 | 211.50 | 211.50 |

DATED: August 5, 1986

/s/     Thomas L. Ryan

Judge,     Allen Circuit Court

## APPENDIX B

Court enters Consolidated Order certifying the Court's Order upon the Counterclaim for purposes of an interlocutory Appeal and find no reason to delay entry of Final Judgment upon the verdict as to Plaintiff's Claim all as per written Consolidated Order. (H.I.)

(1) Certifying Judgment on the Counterclaim Interlocutory Appeal Pursuant to Appellate Rule 4(B)(6).

(2) Directing Entry of Final Judgment on other Jury Verdict on the Complaint Pursuant to Trial Rule 54(B)

Plaintiff has petitioned the Court to certify that portion of the Order dated August 5, 1986, entering an enjunction and judgment

against Plaintiff on Defendant's Counterclaims, for interlocutory appeal under Appellate 4(B)(6),

And the Court, having considered said Motion and being duly advised in the premises, now finds, with respect to that portion of the Order of August 5, 1986, entering an injunction and judgment against Plaintiff on Defendants' Counterclaims, as follows:

(a) That portion of the Order entering judgment and injunction against Plaintiff on Defendants' Counterclaims is interlocutory as it does not finally dispose of all issues between the parties and reserves some issues for subsequent determination.

(b) Petitioner, Fort Wayne Education Association, Inc., and Defendants will suffer substantial expense in attempting to comply with the injunction and order for relief, an expense which would not be necessary of this Court's Order entering the injunction and judgment against Plaintiff on Defendant's Counterclaims is erroneous.

(c) The Order entering an injunction and judgment against Plaintiff on Defendants' Counterclaims involves substantial questions of constitutional law, the early determination of which will promote a more orderly disposition of this cause.

(d) The amount of attorney fees the Court may award to Defendants, if any, may vary following appeal of this matter.

(e) Time is of the essence in this matter. The Court believes it is critical to Plaintiff, to Defendants, to the Fort Wayne Community Schools, and to the proper administration of justice in the trial courts of Indiana for the issues of the Counterclaim to be finally resolved as quickly as possible.

(f) The Court's Order of August 5, 1986 contained a judgment on a jury verdict on the Complaint as well as the injunction and judgment on the Counterclaim. As indicated below, the Court is issuing a Rule 54(B) determination as to the judgment on the jury verdict, and the Court contemplates that a Motion to Correct Errors and other post-judgment proceedings will take place in the trial court on the jury verdict while the judgment on the Counterclaim is being submitted to interlocutory appellate review.

NOW THEREFORE IT IS ORDERED that Plaintiff's Petition to Certify Order for Interlocutory Appeal pursuant to Appellate Rule 4(B)(6) be and hereby is GRANTED and;

IT IS FURTHER ORDERED that the Order of August 5, 1986, be and the same is hereby STAYED except that in regard to the Court's final judgment on the verdict of the jury, the Court determines pursuant to Trial Rule 54(B) that:

1. There is not just reason for delay; and

2. The Court directs entry of final judgment as to paragraph 7 of the Order of Relief and Injunction contained in the Court's Memorandum Order, Findings of Fact and Conclusions of Law entered on August 5, 1986.

All of which is ordered this 6th day of October, 1986.

/s/ Thomas L. Ryan
Thomas L. Ryan, Judge,
Allen Circuit Court